# LEE OLDSMOBILE, INC. *v.* ADA N. KAIDEN ET VIR

[No. 983, September Term 1975.]

*Decided September 14, 1976.*

The cause was argued before POWERS, LOWE and MASON, JJ.

*Abel J. Merrill,* with whom were *Merrill & Lilly, P.A.* on the brief, for appellant — cross-appellee.

*Thomas Waxter, Jr.*, and *Lynne A. Battaglia*, with whom were *Stephen D. Langhoff* and *Semmes, Brown & Semmes* on the brief, for appellees — cross-appellants.

POWERS, J., delivered the opinion of the Court.

Lee Oldsmobile, Inc., as a part of its business operation at Glen Burnie, deals in Rolls-Royce automobiles, under the trade name of Gladding Rolls-Royce, Inc. Having learned through a dealer in Brooklyn, New York, that Gladding had on order as a part of its allotted quota of 10 or 11 automobiles for 1973 a Rolls-Royce of the style and color which she wanted, Mrs. Ada Kaiden of Hewlett, New York, sent to Gladding in August 1973, through her dealer, a $5,000.00 deposit on the purchase of the automobile. Lee Oldsmobile confirmed the request by transmitting a regular order form, which Mrs. Kaiden signed and returned. The price was $29,500.00.

Some of the correspondence, as well as a notation on Mrs. Kaiden's check, indicated that delivery was expected in November. The order form, however, specified no delivery date. Further, it contained a disclaimer of liability for failure to deliver or delay in delivery for a cause beyond the dealer's control, or without fault or negligence of the dealer.

On 21 November 1973 Mrs. Kaiden notified Lee Oldsmobile by telephone that she had purchased another Rolls-Royce elsewhere. She told the salesman to cancel her order. On 29 November, Lee Oldsmobile notified Mrs. Kaiden that the car was ready for delivery. She declined to accept delivery, and demanded the return of her deposit. The dealer refused. On 17 January 1974 Lee Oldsmobile sold the Rolls-Royce to a purchaser in Atlanta, Georgia, for $26,495.00.

A few months later Mrs. Kaiden, joined by her husband, filed a suit at law against Lee Oldsmobile, Inc. in the Circuit Court for Anne Arundel County, claiming damages of $5,000.00, plus interest.

Trial was held before Judge E. Mackall Childs, without a jury, on 24 April 1975. The ultimate result of the trial was that after receiving memorandum arguments from both

sides the court, on 24 June 1975, entered judgment nisi and on 26 June 1975 entered judgment absolute in favor of the plaintiffs against Lee Oldsmobile, Inc. for $2,924.93. Lee Oldsmobile filed a timely appeal from that judgment, and an appeal by the Kaidens followed.

In this Court the appellant raised and argued one question:

> "Is a defendant entitled to present evidence in its behalf after moving for dismissal at the end of the plaintiff's case?"

Cross-appellants raised two questions in their brief, but at oral argument they yielded on the first,[1] and argued the second. It was:

> "Did the trial court err in deducting from Cross Appellants' deposit certain incidental damages associated with the automobile's resale when the resale was not made in a commercially reasonable manner and not in good faith?"

Lee Oldsmobile as cross-appellee, in a separate brief, responded to the brief of the cross-appellants.

Evidence presented at the trial included the testimony of Ada Kaiden and William Kaiden, excerpts from depositions of Anithalee Alex, Jr., salesman, and Ernest Swanson, president, of Lee Oldsmobile, and several exhibits, all offered by the plaintiffs, and one exhibit, offered by the defendant and received in evidence during the cross examination of Mrs. Kaiden.

Counsel for the Kaidens announced that the plaintiffs had concluded their case. Counsel for defendant said, "I move to dismiss under Rule 535." From that point the case took a somewhat unconventional turn, but one which, upon careful examination of the record, we consider eminently practical, and certainly not impermissible. Counsel for Lee Oldsmobile

---

1. The Kaidens abandoned a contention that the trial judge erred in declining to permit parol testimony to vary the terms of the written purchase order, by showing that delivery was orally promised for November. Since delivery was in fact tendered in November, the contention could have no significance in any event.

argued, briefly, that there was uncontradicted evidence of a written retail order for an automobile, with no specific delivery date, and that plaintiff cancelled early, and bought another car. Counsel then said:

> "I needn't belabor the point, I don't believe. I would like, unless the Court requests me to do otherwise, to move on to the issue of damages. Does the Court wish me ... to say anything else on the issue of liability?"

It is entirely clear to us that this argument was directed to the question of who breached the contract — whether it was Lee Oldsmobile, by failure to deliver as allegedly promised, or Mrs. Kaiden, either by an anticipatory breach, or by refusal to accept delivery when delivery was offered. In the background of this argument, and basic to the entire case, was the established fact that Lee Oldsmobile had received $5,000.00 from Mrs. Kaiden, for which she received nothing in return. If Lee Oldsmobile breached the contract, she was entitled to her money back. If she breached the contract, she was liable for whatever was found to be the proper amount of damages. Those damages could constitute either a partial or a complete set-off against the amount which Mrs. Kaiden, in the absence of damages, would be entitled to recover.

The argument of Lee Oldsmobile then proceeded to the issue of damages. Counsel said:

> "I think that in the plaintiffs' case there is evidence to substantiate what appear as answer five to the plaintiffs' interrogatories listing the actual damages sustained by the defendant as a result of the plaintiffs' breach."

He then proceeded to itemize the figures. As listed later in the Memorandum Opinion filed by Judge Childs, they amounted to $5,080.07. The total was made up as follows:

| Difference between contract price of $29,500.00 and sale price of $26,495.00 | $ 3,005.00 |
|---|---|
| Commission to salesman on second sale | 601.00 |
| Commission to broker on second sale | 1,000.00 |
| Floor plan interest on cost of car, 52 days | 334.72 |
| Transportation expenses [2] | 139.35 |
| Total | $ 5,080.07 |

Counsel further argued, as an alternative claim of damages, that under the liquidated damage clause of the written contract, Lee Oldsmobile was entitled, upon breach by the purchaser, to retain as liquidated damages the entire cash deposit.

Counsel for the Kaidens argued the applicability of the liquidated damage clause, and the proper measure of damages under the law when the seller fails to give notice of intention to resell at private sale.

The trial judge interposed. He said:

"It's clear to me that there was a breach by the plaintiffs. Now, the only thing that I'm concerned about is whether or not the liquidated damages clause contained in the contract can be applied by the Court. I would like some briefs on that matter, along with arithmetic as to what has been paid. * * * I rule that there was a breach of the contract by the plaintiffs and the only question to be decided or remaining to be decided is to what damages the plaintiff or the defendant is entitled under this breach pursuant to the matters in the Uniform Commercial Code and also the Laws of Maryland. Now, how much time do you want to submit briefs to me on that?"

Lee Oldsmobile's attorney called to the court's attention that damages could be as liquidated in an agreement, or the actual harm caused by the breach. He concluded:

"I believe that the Court has before it at this very

2. This item of $139.35 was referred to as being listed in answers to interrogatories, but not placed in evidence. Whether inadvertently or not, Judge Childs allowed it as an expense in calculating the amount of the judgment. The Kaidens do not attack this specific item on that ground.

moment enough evidence as to the actual harm caused by the breach to make a ruling without the necessity for briefs, but if it feels otherwise, I'll be glad to prepare one."

The court preferred written briefs. The time for filing them was agreed upon.[3]

We hold that under the circumstances, as we have set them out in considerable detail, both sides submitted the whole case to the trial judge for a decision on the merits. It is true, as is argued in Lee Oldsmobile's brief, that its counsel, during the course of his argument on the liquidated damage clause, commented that he had intended, and would if necessary, put on a witness to prove that the amount fixed was a reasonable forecast of the damages to be suffered. But our ruling on the applicability of the liquidated damage clause would not be affected by such evidence. As the trial closed with the agreement on the time for filing briefs, there was no suggestion by either party of a desire to offer further evidence. The suggestion was to the contrary.

It may be seen from our reference to the rulings made below, and from the issues raised in this appeal by the parties, that Lee Oldsmobile holds $5,000.00 of Mrs. Kaiden's money; that Mrs. Kaiden breached her contract to buy a Rolls-Royce automobile; and that whatever damages flowed from the breach should reduce, pro tanto, Mrs. Kaiden's right to get her money back. The question of law presented is how to determine the damages. The question of fact is their amount.

The order form signed by Mrs. Kaiden contained a clause providing that the dealer shall have the right, upon failure

---

3. The clerk entered on the docket:

"At end of the Plaintiffs' case the Defendant moved for a dismissal. Motion granted. Court holds the matter of damages sustained by the Defendant under advisement."

This anomalous entry is patently in error. The transcript shows no ruling on the motion to dismiss, unless the ruling that Mrs. Kaiden breached the contract be construed as a partial ruling. Maryland Rule 535 does not provide for partial rulings. Obviously, if the plaintiffs' case had been dismissed, there would be nothing to hold under advisement.

or refusal of the purchaser to accept delivery of the motor vehicle, to retain as liquidated damages any cash deposit made by the purchaser. The Uniform Commercial Code, as in force in Maryland, Code, Commercial Law Art.,[4] § 2-718 (1) provides:

> "Damages for breach by either party may be liquidated in the agreement but only at an amount which is reasonable in the light of the anticipated or actual harm caused by the breach, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy. A term fixing unreasonably large liquidated damages is void as a penalty."

In *Traylor v. Grafton*, 273 Md. 649, 332 A. 2d 651 (1975), the Court of Appeals reviewed at length numerous decisions dealing with liquidated damage clauses in contracts. Running through many of the cases is the rule that not only must the amount be a reasonable forecast of just compensation, but that actual damages from a breach must be incapable or very difficult of accurate estimation. As Judge O'Donnell said it for the Court in *Traylor v. Grafton*, at 662:

> "If the sum agreed upon is a reasonable forecast of the just and fair compensation for the harm that would result by a breach of the contract and the resultant injury is difficult to estimate accurately or actual damages could not be easily ascertained, such a clause has been held enforceable as liquidated damages." (Citations omitted).

See *Siler v. Marshall*, 251 Md. 342, 247 A. 2d 385 (1968), and *Goldman v. Conn. Gen. Life Ins. Co.*, 251 Md. 575, 248 A. 2d 154 (1968).

We reject the application of the liquidated damage clause in the present case, as the trial judge did below, because it is clear that the actual damages are capable of accurate

---

4. Formerly Article 95B, prior to 1 July 1975. For convenience we shall refer to the current Code.

estimation. We do not say this from hindsight made possible because the actual figures claimed were in evidence. We say it because at the time the contract was made, it was clear that the nature of any damages which would result from a possible future breach was such that they would be easily ascertainable.

We set out earlier a tabulation of the items of damages, and the amount of each, which Lee Oldsmobile claimed should be set off against Mrs. Kaiden's deposit. The itemized claims totaled $5,080.07.[5] The trial judge did not allow the item of $3,005.00, the difference between the contract price of $29,500.00 and the resale price of $26,495.00. That is why Lee Oldsmobile complains. The court did allow the other items, which come to a total of $2,075.07, and set that amount off against the $5,000.00 deposit, resulting in the judgment for the Kaidens in the amount of $2,924.93. That is why the Kaidens complain.

Several sections of the Uniform Commercial Code govern our resolution of the remaining issues. Under § 2-703, where the buyer repudiates, the aggrieved seller may

"(d) Resell and recover damages as hereafter provided (§ 2-706);

(e) Recover damages for nonacceptance (§ 2-708)
* * *."

For Lee Oldsmobile to be entitled to claim as damages the difference between the resale price and the contract price, the sum of $3,005.00 in this case, the resale must meet the requirements of § 2-706. That section provides, in part:

"(1) Under the conditions stated in § 2-703 on seller's remedies, the seller may resell the goods concerned or the undelivered balance thereof. Where the resale is made in good faith and in a commercially reasonable manner the seller may

5. That the total of the itemized claims, each easily and precisely ascertainable, was almost identical with the amount claimed as liquidated damages, is either a mere coincidence or a demonstration that there would be no difficulty in ascertaining damages in the event of a breach, which robs the liquidated damage clause of a necessary premise.

recover the difference between the resale price and the contract price together with any incidental damages allowed under the provisions of this title (§ 2-701), but less expenses saved in consequence of the buyer's breach.

"(2) Except as otherwise provided in subsection (3) or unless otherwise agreed resale may be at public or private sale including sale by way of one or more contracts to sell or of identification to an existing contract of the seller. Sale may be as a unit or in parcels and at any time and place and on any terms but every aspect of the sale including the method, manner, time, place and terms must be commercially reasonable. The resale must be reasonably identified as referring to the broken contract, but it is not necessary that the goods be in existence or that any or all of them have been identified to the contract before the breach.

"(3) Where the resale is at private sale the seller must give the buyer reasonable notification of his intention to resell."

The trial court rejected as an item of damage the difference between the resale price and the contract price, because it held that the resale made by Lee Oldsmobile was not made in a commercially reasonable manner, and that no notification was given of its intention to resell at private sale. We need not decide whether the resale was made in a commercially reasonable manner. It is enough that Lee Oldsmobile did not give the Kaidens reasonable notification of its intention to resell. Hawkland, in *A Transactional Guide to the Uniform Commercial Code*, at p. 275, says:

"If the seller fails to honor these restrictions, he cannot use the resale price as a factor in determining damages. In such a case, he must settle for damages, computed by measuring the difference between the market price and the contract price as provided in section 2-708."

and further at 277:

> "Except for the requirement of notice, section 2-706 imposes no special restrictions on the seller as to the manner of conducting a private resale. The seller must comply, though, with the general standards of good faith and commercial reasonableness. These standards undoubtedly will be employed rather meticulously by courts to prevent the private resale from becoming an instrument of abuse."

Deprived of the benefits of § 2-706 by its failure to give notice of its intention to resell at private sale, Lee Oldsmobile is still entitled to the remedy set out in § 2-703 (e), to recover damages for nonacceptance, under § 2-708. That section provides, in part:

> "(1) Subject to subsection (2) and to the provisions of this title with respect to proof of market price (§ 2-723), the measure of damages for nonacceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this title (§ 2-710), but less expenses saved in consequence of the buyer's breach."

It will be seen that § 2-708 (1) authorizes two kinds of damage to an aggrieved seller. The first, the difference between the market price at the time and place for tender and the contract price [6] was not claimed in this case, perhaps because Lee Oldsmobile's salesman testified in his deposition that the market price of a Rolls-Royce was the sticker price. For the incidental damages authorized in § 2-708 (1), one turns to § 2-710, which says:

> "Incidental damages to an aggrieved seller

---

6. This measure of damage appears to be authorized irrespective of whether the aggrieved seller actually covered himself by a resale, and irrespective, as well, of whether a resale, if made, brought more or less than market price.

include any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach."

Every item of damage claimed by Lee Oldsmobile which was allowable under §§ 2-708 and 2-710 was in fact allowed by the trial court as a set-off, to reduce the judgment entered against it. The contention of the Kaidens in their cross appeal that the incidental damages should not have been allowed, because the resale of the automobile was not made in a commercially reasonable manner, cannot prevail. Those incidental damages are allowable to an aggrieved seller under § 2-710, whether he gets there through § 2-706 or through § 2-708. It is only § 2-706 which imposes the condition of a commercially reasonable resale. The remedies under § 2-708 are not related to a resale. Under § 2-710, it is only the incidental damages, not an antecedent resale, which must be commercially reasonable. There is no contention here that the items of damage allowed were not commercially reasonable.

*Judgment affirmed.*
*Costs to be paid one half by appellant and cross appellee, and one half by appellees and cross appellants.*