NOBS CHEMICAL, U.S.A., INC. and Calmon-Hill Trading Corp., Plaintiffs-Appellants Cross-Appellees,

v.

KOPPERS CO., INC., Defendant-Appellee Cross-Appellant,

Schenectady Chemicals, Inc., Defendant.

No. 77–3202.

United States Court of Appeals, Fifth Circuit.

May 2, 1980.

Rehearing and Rehearing En Banc Denied June 6, 1980.

---

David C. Redford, Houston, Tex., for plaintiffs-appellants cross-appellees.

Alvin M. Owsley, Jr., Cathy L. Jordan, Houston, Tex., for defendant-appellee cross-appellant.

Before CHARLES CLARK, RONEY and HENDERSON, Circuit Judges.

HENDERSON, Circuit Judge:

Koppers Company contracted with the plaintiffs, Nobs Chemical, U.S.A., Inc. (hereinafter referred to as "Nobs") and Calmon-Hill Trading Corporation (hereinafter referred to as "Calmon-Hill") to purchase 1000 metric tons of cumene.[1] Koppers breached the contract. Nobs and Calmon-Hill brought suit in United States District Court for the Southern District of Texas, and the case was tried before the court sitting without a jury.

The district court found that the plaintiffs had arranged to purchase the cumene in Brazil for $400.00 a ton and to expend $45.00 per ton for the cost of transporting the cumene to the defendant, for a total expense of $445,000.00. Koppers agreed to buy the cumene for $540,000.00. The court applied Tex.Bus. & Com.Code § 2.708(b) (Vernon),[2] and determined that the plaintiffs were entitled to recover their lost profits, $95,000.00 ($540,000.00 minus $445,000.00). The district court ruled that the plaintiffs could not recover the extra $25.00 per ton they allegedly were forced to pay their Brazilian supplier when the price per ton increased because their total order with the supplier was reduced from 4,000 metric tons to 3,000 metric tons because of Koppers' breach. The court decided this lost quantity discount amounted to consequential damages and was, therefore, not recoverable.

Nobs and Calmon-Hill appeal the measure of damages applied by the district court, and, assuming it is correct, they challenge the computation of those damages. The defendant, Koppers, cross-appeals, also claiming that the district court's calculation of damages under the lost profits method was incorrect.

We first turn to the issue of whether the district court was correct in applying the lost profits measure of damages to the plaintiffs' loss.

According to Tex.Bus. & Com.Code Ann. § 2.708 (Vernon)

(a) . . . the measure of damages for non-acceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages provided in this chapter (Section 2.710), but less expenses saved in consequence of the buyer's breach.

(b) If the measure of damages provided in Subsection (a) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this chapter (Section 2.710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.

The plaintiffs urge that subsection (a) should govern in this case. Because the market value of cumene dropped to between $220.40 and $264.48 a metric ton at the time of the breach, the plaintiffs contend that they should recover the difference between the contract price ($540,000.00) and the market price (between $220,400.00 and $264,480.00), substantially more than the $95,000.00 awarded them under subsection (b).

■ There appears to be no Texas, nor any other state's, law directly on point. Under *Erie R. R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court must follow state law in a diversity case. Where no state court has decided the issue a federal court must "make an educated guess as to how that state's supreme court would rule." *Benante v. Allstate Ins. Co.,* 477 F.2d 553, 554 (5th Cir. 1973); *Smoot v. State Farm Mut.*

---

1. Cumene is "a colorless oily hydrocarbon . . . used as an additive for high-octane motor fuel. . . . " Webster's Third New International Dictionary 553 (1966).

2. The Texas legislature changed the citation form for the code sections slightly when it adopted the Uniform Commercial Code. In this opinion, reference will be made to the code sections by citation to the form used by Texas.

*Auto. Ins. Co.,* 299 F.2d 525, 529 (5th Cir. 1962).

Because there does not appear to be any law directly on point, we take the liberty of looking to those more learned on the subject of the Uniform Commercial Code. Professors White and Summers, recognizing that § 2.708(b) is not the most lucid or best-drafted of the sales article sections, decided that the drafters of the Uniform Commercial Code intended subsection (b) to apply to certain sellers whose losses would rarely be compensated by the subsection (a) market price-contract price measure of damages, and for these sellers the lost profit formula was added in subsection (b). One such type of seller is a "jobber," who, according to the treatise writers, must satisfy two conditions: "[f]irst, he is a seller who never acquires the contract goods. Second, his decision not to acquire those goods after learning of the breach was not commercially unreasonable. . . ." J. White & R. Summers, *Uniform Commercial Code* § 7–10, at 228 (1972) (hereinafter cited as "White & Summers"). Nobs and Calmon-Hill clearly fit this description. The plaintiffs never acquired the goods from their Brazilian supplier, and, as White and Summers point out, an action for the purchase price or resale was therefore unavailable. *See,* Tex.Bus. & Com.Code Ann. §§ 2.703, 2.704, 2.706, 2.709 (Vernon). *See also, American Metal Climax, Inc. v. Essex International, Inc.,* 16 U.C.C.Rep. 101, 115 (S.D.N.Y.1974) ("[C]ompensatory damages as provided in the contract-market formula of § 2–708(1) [§ 2.708(a)] are realistic only where the seller continues to be in a position to sell the product to other customers in the market.").

The plaintiffs argue, however, that in this case the measure of damages under subsection (a) would adequately compensate them and therefore, according to the terms of subsection (a), subsection (b) does not control. This is an intriguing argument. It appears that the drafters of § 2.708(a) did not consider the possibility that recovery under that section may be

*more than* adequate. White & Summers, *supra,* § 7–12, at 232–233.

It is possible that the code drafters intended subsection (a) as a liquidated damage clause available to a plaintiff-seller regardless of his actual damages. There have been some commentators who agree with this philosophy. *See,* C. Goetz & R. Scott, *Measuring Sellers' Damages: the Lost-Profits Puzzle,* 31 Stan.L.Rev. 323, 323–324 n. 2 (1979); E. Peters, *Remedies for Breach of Contracts Relating to the Sale of Goods Under the Uniform Commercial Code: A Roadmap for Article Two,* 73 Yale L.J. 199, 259 (1963). But, this construction is inconsistent with the code's basic philosophy, announced in Tex.Bus. & Com.Code Ann. § 1.106(a) (Vernon), which provides "that the aggrieved party may be put in as good a position as if the other party had fully performed" but not in a better posture. White & Summers, *supra,* § 7–12, at 232. This philosophy is echoed in Texas case law. "The measure of damages for breach of contract is the amount necessary to place plaintiffs in a financial position equivalent to that in which it would have had [sic] if the contract had been fully performed by both parties." *Little Darling Corp. v. Ald, Inc.,* 566 S.W.2d 347, 349 (Tex.Civ.App. 1978). Moreover, White and Summers conclude that statutory damage formulas do not significantly affect the practices of businessmen and therefore "breach deterrence," which would be the purpose of the statutory liquidated damages clause, should be rejected in favor of a standard approximating actual economic loss. White & Summers, *supra,* § 7–12, at 232. No one insists, and we do not think they could, that the difference between the fallen market price and the contract price is necessary to compensate the plaintiffs for the breach. Had the transaction been completed, their "benefit of the bargain" would not have been affected by the fall in market price, and they would not have experienced the windfall they otherwise would receive if the market price-contract price rule contained in § 2.708(a) is followed. Thus, the premise contained in § 1.106 and Texas case law is a

strong factor weighing against application of § 2.708(a).[3]

Our conclusion that the district court was correct in applying § 2.708(b) brings us to the second issue—was it error for the district court to refuse to award the plaintiffs the additional $75,000.00, which they were required to pay when they lost their quantity discount?

 We believe the trial court was correct in declining to award the plaintiffs the extra $75,000.00.[4] Under § 2.708(b), in addition to profit, the seller may recover "incidental damages" and "due allowance for costs reasonably incurred." The code does not provide for the recovery of consequential damages by a seller. Tex.Bus. & Com. Code Ann. § 1.106(a) (Vernon); *Petroleo Brasileiro, S. A. v. Ameropan Oil Corp.,* 372 F.Supp. 503, 508 (E.D.N.Y.1974); *Cf.* Tex. Bus. & Com.Code Ann. § 2.715 (Vernon) (buyer's remedies). "Incidental damages" are defined in Tex.Bus. & Com.Code Ann. § 2.710 (Vernon) as "any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach." The draftsmen's comment to the section states that the purpose is to "authorize reimbursement of the seller for expenses reasonably incurred by him as a result of the buyer's breach." We think it is clear that § 2.710 was intended to cover only those expenses contracted by the seller after the breach and occasioned by such things as the seller's need to care for, and, if necessary, dispose of, the goods in a commercially reasonable manner. *See, Guy H. James Construction Co. v. L. B. Foster Co.,* No. 17,473 (Tex.Civ. App. 1979) (cost of replacing material in stock for resale recoverable as incidental

damages); *Cesco Mfg. Corp. v. Norcross, Inc.,* —— Mass.App. ——, 391 N.E.2d 270, 27 U.C.C.Rep. 126 (Mass.App.1979) (incidental damages awarded for storage and moving of goods wrongfully rejected); *Lee Oldsmobile v. Kaiden,* 32 Md.App. 556, 363 A.2d 270, 20 U.C.C.Rep. 117 (1976) (commissions paid to salesman and broker on resale, floor plan interest on cost of car between breach of contract for sale of car and resale, and transportation expenses recoverable as incidental damages); *Harlow & Jones, Inc. v. Advance Steel Co.,* 424 F.Supp. 770 (E.D. Mich.1976) (charges for storage and handling of goods after breach recoverable as incidental damages); *Neri v. Retail Marine Corp.,* 30 N.Y.2d 393, 334 N.Y.S.2d 165, 285 N.E.2d 311, 10 U.C.C.Rep. 950 (1972) (proper incidental damages include storage, upkeep, finance charges and insurance for boat after buyer breached contract for sale); *Bache & Co. v. International Controls Corp.,* 339 F.Supp. 341 (S.D.N.Y.), *aff'd* 469 F.2d 696 (2d Cir. 1972) (seller can recover as incidental damages commissions due him as result of buyer's breach); *Hudgens v. Bain Equip. & Tube Sales, Inc.,* 459 S.W.2d 873 (Tex.Civ.App.1970) (expense of recovering and transporting goods not paid for awarded); *Cf., Industrial Circuits Co. v. Terminal Communications, Inc.,* 26 N.C.App. 536, 216 S.E.2d 919, 17 U.C.C.Rep. 996 (1975) ("bill back" charges which resulted when buyer failed to order a certain quantity not allowed).

Equally as clear is the premise that this lost discount is not a "cost reasonably incurred" within the meaning of § 2.708(b), which has been defined as "an amount equal to what he [the seller] has expended for performance of the contract that will now be valueless." White & Summers, *supra,* § 7–13, at 236. The extra $25.00 per ton does not fall within this definition, most

---

**3.** White and Summers condition forcing the damage formula of subsection (b) on the plaintiff-seller. They would require the defendant to prove that the measure of damages in subsection (a) would overcompensate the plaintiff. We do not find this to be a problem here, as the figures themselves refute any contention that the market price-contract price rule is anything

but over-adequate compensation for the plaintiffs. White & Summers, *supra,* § 7–12, at 232–233.

**4.** Because we find that these expenses were not recoverable under § 2.708(b), it is unnecessary to decide whether the district court correctly termed these costs "consequential damages."

obviously because it was not an expense necessary to the performance of the contract. Rather, it was simply an extra benefit the sellers did not receive from their supplier by reason of the buyer's breach.

Finally, on cross-appeal, Koppers first maintains that the district court failed to include in the damage formula the commission Calmon-Hill would have been required to pay Nobs had there been no breach. This sum, $16,200.00, claims Koppers, should have been added into the costs which would have been incurred by Calmon-Hill in performing the contract. Plugging the commission into the lost profits formula would reduce the damage award, because lost profits are computed by subtracting the cost of performance to the seller from the contract price.

Koppers' argument assumes that Nobs is not seeking its commission from Calmon-Hill because of the breach. That has not been shown. In fact, it appears that Nobs now expects a much larger percentage of the damage award than the 3% commission originally agreed upon. *See,* Trial Transcript, at 12, 47.

Koppers also attacks the sufficiency of the plaintiffs' evidence that the cumene was to come from a Brazilian supplier. Without proof of the source of the cumene, the plaintiffs could not show (1) the cost to them of acquiring the cumene and (2) the cost of freight and insurance, which would be an additional amount added into the cost of performance in computing the sellers' lost profit, and which would vary according to the location of the cumene supplier.

On review, we may not disturb the district court's findings of fact unless they are clearly erroneous. Rule 52(a), Fed.R. Civ.P. "A finding is 'clearly erroneous' when although there is substantial evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746, 766 (1948). And, in a suit on a contract, we do not require exactness, only that there was enough evidence for the district court to estimate the amount of damages with reasonable certainty. *Fredonia Broadcasting Corp. v. RCA Corp.,* 481 F.2d 781, 804 (5th Cir. 1973).

At the trial, G. B. Marinelli, a part owner of Calmon-Hill, who was involved in the cumene transaction with Koppers, testified that Calmon-Hill had an agreement with a Brazilian supplier to furnish 4,000 metric tons of cumene, 1,000 tons of which was for Koppers. He also stated that the entire cost per ton, including insurance and freight, was somewhere between $445.00 and $450.00 for the cumene. Although counsel for Koppers attempted to impeach Marinelli on these points, he remained firm in his assertion that the source of the cumene was to be a Brazilian supplier. Based on the evidence, the trial court's finding was not clearly erroneous.

AFFIRMED.