**In re ASHBY ENTERPRISES, LTD., Luskins Appliances, Inc., Luskins, Inc. We–Are–Electronics, Inc., Sound and Sight, Inc., Debtors.**

**Ashby Enterprises, Ltd., Luskins Appliances, Inc., Luskins, Inc., We–Are–Electronics, Inc., Sound and Sight, Inc., Plaintiffs,**

**v.**

**Petters Company, Inc., Defendant.**

**Bankruptcy Nos. 97–5–1887–JS to 97–5–1891–JS.**

**Adversary No. 97–5342–JS.**

United States Bankruptcy Court, D. Maryland, at Baltimore.

Jan. 29, 2001.

Thomas M. Wood, IV, Neuberger, Quinn, Gielen, Rubin & Gibber, P.A., Baltimore, MD, for plaintiff.

Brian P. Phelan, Conlon, France, Phelan & Pires, Washington, DC, Donald S. Arbour, Minneapolis, MN, for defendant.

*MEMORANDUM OPINION DETERMINING DAMAGES AGAINST DEFENDANT FOR BREACH OF CONTRACT AND GRANTING JUDGMENT FOR THE PLAINTIFFS*

JAMES F. SCHNEIDER, Bankruptcy Judge.

On February 13, 1997, Ashby Enterprises, Ltd., Luskins Appliances, Inc., Luskins, Inc., We–Are–Electronics, Inc., and Sound and Sight, Inc., (the "plaintiffs," or collectively "Luskins") filed voluntary Chapter 11 bankruptcy petitions in this Court. On July 10, 1997, the plaintiffs filed the instant amended complaint for breach of contract and damages against the defendant, Petters Company, Inc. At trial on January 21, 1999, this Court found the defendant liable to the plaintiffs for breach of a contract dated December 21, 1996 ("Collateral Disposition Agreement" or "Agreement".) by which Petters obligated itself to purchase "factory-fresh" inventory from Luskins located at a warehouse in Columbia, Maryland, and retail outlets located in Towson and Woodlawn, Maryland. Determination of the amount of damages was reserved, and the parties submitted post-trial briefs on that issue. Based upon the submissions and the evidence presented at trial, the Court has determined damages to have been sustained by the plaintiffs in the amount of $94,594.07, and will enter judgment in that amount in favor of Luskins, Inc., against Petters, Inc.

*FINDINGS OF FACT*

The following statement of facts adopted by this Court is an amalgam of facts contained in the plaintiff's pretrial statement and post-hearing brief:

Luskins maintained a chain of consumer electronics and appliance stores in Maryland and other states. Luskins decided to close its stores in Towson, Maryland, and

in Woodlawn, Maryland. It entered into discussions concerning the purchase of portions of its inventory with the defendant, Petters Company, Inc., which is in the business of selling inventory. These discussions occurred primarily between Kevin Luskin, Cary Luskin and Bill Love, Luskins' representatives, and Karl Petters, President of Petters Company, and Jim Potts, a Petters representative, in November and December, 1996.

During the parties' discussions, Luskins sent Petters a sample list of inventory prices dated December 10, 1996. The sole purpose of the list was to provide Petters with prices for some of Luskins' merchandise that possibly would be available for sale to Petters at the three inventory locations. At that time, Petters had not agreed to purchase any of Luskins' inventory, nor had Luskins identified specific items or amounts of inventory that it would sell to Petters.

On December 21, 1996, Karl Petters, in his capacity as President of Petters, agreed to purchase a portion of Luskins' inventory pursuant to the Agreement. Specifically, the Agreement stated that Petters would purchase "all merchandise inventory . . . on hand as of the Inventory Date (as hereinafter defined) located at" the Towson store, the Security store, and at a warehouse at 7125 Gateway Drive, Columbia, Maryland. Agreement at ¶ 1. The Agreement then defined the " 'Inventory Date' for all three locations as December 21–22, 1996." *Id.* at ¶ 2.

According to the Agreement, Luskins and Petters were to take an inventory of "all merchandise in factory-fresh cartons or containers, excluding therefrom The Big Screen Store Inventory at the Warehouse and [other specified items] (collectively 'the inventory')" at each store by December 22, 1996. *Id.* Within two days after completion of the inventory at each

store, Petters was required to purchase the inventory from Luskins' creditor, Premier Acceptance, LLC, which had a security interest in the inventory, thereby reducing Luskins' financial obligations to the creditor. *Id.* at ¶ 3.

The purchase prices for the various items of inventory were established by Attachment A to the Agreement, which was entitled "Inventory Pricing," and which read as follows:

PETTERS shall pay the amount listed on the attached computer-generated pricing sheet previously supplied to PETTERS multiplied by a factor of 0.69.

For example, if the amount listed on the attached pricing sheet is $100.00, PETTERS shall pay $100.00 X 0.69 = $ 69.00.

*Id.* Thus, under the terms of Attachment A, Petters agreed to pay 69% of the inventory price reflected on the December 10, 1996, price list for those items of inventory it was obligated to purchase. Possession of the inventory at each store was to be delivered to Petters after Petters had paid for the inventory, *Id.,* and "time was of the essence." *Id.* at ¶ 10(g).

Pursuant to Paragraph 4 of the Agreement, Luskins disclaimed any warranty concerning the condition of the inventory at the three locations. That paragraph stated the following:

4. Neither [Luskins] or Lender make any warranty with respect to the condition of any of the Inventory, all of which PETTERS expressly agrees to purchase and accept AS IS—WHERE IS, and with all faults and defects, including but not limited to those faults and defects that are not readily observable or ascertainable upon reasonable inspection.

The Agreement also contained an integration clause, which stated that the Agreement was the complete and exclusive

manifestation of the terms of the transaction between the parties. The integration clause read as follows:

(c) This Agreement sets forth the entire agreement and understanding of the parties with respect to the subject matter hereof, and there are no other prior or contemporaneous written or oral agreements, undertakings, promises, warranties, or covenants not specifically referred to, attached hereto, or contained herein. This Agreement may be amended, modified or terminated only by a written instrument signed by the parties hereto.

Agreement at ¶ 10(c).

Between December 21 and December 24, 1996, Petters' representatives conducted a physical inventory at the three inventory sites, as provided in the Agreement. According to Petters, the inventory that was available to be purchased at the three sites was less than the amount of inventory that Luskins, prior to the execution of the Agreement, had said was available. In a letter dated December 27, 1996, Petters' legal counsel, David S. Arbour, told Luskins' legal counsel, Michael L. Quinn, that "Petters [would] not be purchasing inventory from Luskins, Inc. as originally intended" because the type and quantity of inventory available for sale "is not what was represented to Petters at the time it agreed to acquire the inventory." Based on this contention, Mr. Arbour then stated that this alleged inventory disparity constituted "a mistake of fact and/or false misrepresentation so as to prevent formation of a valid contract" between Petters and Luskins.

Luskins' legal counsel, Cynthia L. Leppert, responded to Mr. Arbour the same day by letter dated December 27, 1996. Ms. Leppert notified Petters that Luskins considered the statements in Mr. Arbour's letter "to constitute an actionable breach and repudiation of the Agreement." Ms. Leppert, however, also stated that Luskins remained "ready, willing and able to perform [its] obligations under the Agreement," if Petters paid the full amount due under the terms of the Agreement by December 30, 1996. Based on the results of the inventory conducted at the three sites, the cost of the inventory to Luskins was $ 832,725.83. Petters was therefore required to pay $ 574,580.25, which represented 69% of the inventory cost. Ms. Leppert further warned Petters that if Petters did not make the required payment, Luskins would resell the inventory and hold Petters responsible for any deficiency in the proceeds received from such a sale.

When Petters again refused to comply with the terms of the Agreement, Luskins was forced to resell to Hudson Salvage, Inc.("Hudson") in January, 1997, all of the inventory that was subject to the Agreement with Petters, in an effort to mitigate Luskins' damages. The inventory prices charged to Hudson were determined by multiplying the listed price of the inventory item by 51.25%, resulting sale proceeds of $ 426,771.99. Because of the disparity between the price Petters had agreed to pay for the inventory and the price at which Luskins sold the inventory to Hudson, Luskins was unable to achieve full mitigation and suffered a loss of $ 147,-808.26 as a result of Petters' breach. Luskins also had to conduct another inventory at the three sites to effectuate the sale to Hudson, thus incurring additional labor costs of approximately $3,891.66. Consequently, Luskins' total damages resulting from Petters' breach amount to $151,699.92. This figure was reduced after trial to $ 94,594.07, reflecting that certain additional items were sold at the Towson store that should not be charged against Petters.

The uncontroverted testimonial and documentary evidence presented at trial established that a valid contract was executed by the parties on December 21, 1996 [Plaintiff's Exhibit 3]; that the contract required Petters to purchase certain defined inventory from Luskins based on inventory in existence on a defined "Inventory Date" that was located at the Towson and Woodlawn stores and at a warehouse in Columbia, Maryland; Petters was required to conduct an inventory of all merchandise in factory fresh cartons or containers, excluding inventory from the Big Screen Store that was stored in the warehouse and other specified items by December 22, 1996; that Petters was required to purchase such inventory from Luskins' lender within two days after the completion of the inventory at each location; that there were no warranties from Luskins regarding the inventory to be purchased; that Petters conducted the inventory between December 23 and 24, 1996, evidenced by computer-generated inventory sheets from the warehouse and stores [Plaintiff's Exhibit 4]; and that Petters' failure to consummate the Agreement by purchasing the Luskins "factory fresh" merchandise was without legal excuse or justification.

This Court found that Petters' refusal to purchase the merchandise on the inventory sheets constituted a breach of contract and ruled that Petters was obligated to Luskins for damages. The issues of proof of damages and in what amount were reserved and are the subjects of this opinion, in connection with which the parties submitted post hearing briefs.

Petters contended that Luskins was unable to prove any damages resulting from the breach because (1) inventory that Luskins resold to Hudson in mitigation of damages was not identifiable to the Petters contract; (2) a higher cost assigned by Luskins to the inventory sold to Hudson than that assigned to the inventory for sale to Petters artificially inflated Luskins' claimed deficiency between the two sales; (3) dates of inventories conducted at the various locations did not correspond with the applicable sale dates; and (4) Luskins' failure to produce adequate records of inventory and sales precluded it from establishing its damages with the required degree of certainty.

## CONCLUSIONS OF LAW

The commercial sale of goods in Maryland is governed by Section 2–703 contained in Article 2 of the Maryland Commercial Code.[1]

The seller's right to recover damages after the resale of goods wrongfully rejected by a buyer is provided for in Section 2–706 of the same Article.[2]

---

1. Section 2–703 of the Maryland Commercial Code provides:

**§ 2–703  Seller's remedies in general.**
Where the buyer wrongfully rejects or revokes acceptance of goods or fails to make a payment due on or before delivery or repudiates with respect to a part or the whole, then with respect to any goods directly affected and, if the breach is of the whole contract (§ 2–612), then also with respect to the whole undelivered balance, the aggrieved seller may
 (a) Withhold delivery of such goods;
 (b) Stop delivery by any bailee as hereafter provided (§ 2–705);
 (c) Proceed under the next section respecting goods still unidentified to the contract;
 (d) Resell and recover damages as hereafter provided (§ 2–706);
 (e) Recover damages for nonacceptance (§ 2–708) or in a proper case the price (§ 2–709);
 (f) Cancel.
Md. Code Ann., [Comm. Law I] § 2–703 (1997).

2. Section 2–706 provides as follows:

**§ 2–706  Seller's resale including contract for resale.**

In order to recover damages under Section 2–706 in making a private resale of goods subject to a breached sale contract, the seller must satisfy three requirements, namely, "(1) identify the resale contract to the broken contract; (2) give the buyer reasonable notification of the seller's intention to resell; and (3) resell in good faith and in a commercially reasonable manner." James J. White and Robert S. Summers, UNIFORM COMMERCIAL CODE (4th ed.) § 7–6. *Cf. Obrecht v. Crawford*, 175 Md. 385, 398–99, 2 A.2d 1, 8 (1938) ("A sale in good faith is a fair sale according to established business methods, with no attempt to take advantage of the vendee, and the burden of proving that the sale was so made seems to be upon the seller.") If there is compliance by the seller with the prescribed standard of duty in making the resale, the seller may recover the damages from the original buyer provided for in subsection (1) of Section 2–706. *Lee Oldsmobile, Inc. v. Kaiden*, 32 Md.App. 556, 563–564, 363 A.2d 270, 274–275 (1976). As Official Comment No. 4 to Section 2–706 states, "Subsection (2) frees the remedy of resale from legalistic restrictions and enables the seller to resell in accordance with reasonable commercial practices so as to realize as high a price as possible in the circumstances." MD. CODE ANN., [COMM. LAW I] § 2–706, cmt. no.4 (1997).

The Court finds the resale to have been conducted by Luskins in a commercially reasonable manner and in good faith. Proper notice of the private resale was provided by Luskins to Petters, as required by subsection (3) of Section 2–706.

(1) Under the conditions stated in § 2–703 on seller's remedies, the seller may resell the goods concerned or the undelivered balance thereof. Where the resale is made in good faith and in a commercially reasonable manner the seller may recover the difference between the resale price and the contract price together with any incidental damages allowed under the provisions of this title (§ 2–710), but less expenses saved in consequence of the buyer's breach.

(2) Except as otherwise provided in subsection (3) or unless otherwise agreed resale may be at public or private sale including sale by way of one or more contracts to sell or of identification to an existing contract of the seller. Sale may be as a unit or in parcels and at any time and place and on any terms but every aspect of the sale including the method, manner, time, place and terms must be commercially reasonable. The resale must be reasonably identified as referring to the broken contract, but it is not necessary that the goods be in existence or that any or all of them have been identified to the contract before the breach.

(3) Where the resale is at private sale the seller must give the buyer reasonable notification of his intention to resell.

(4) Where the resale is at public sale

(a) Only identified goods can be sold except where there is a recognized market for a public sale of futures in goods of the kind; and

(b) It must be made at a usual place or market for public sale if one is reasonably available and except in the case of goods which are perishable or threaten to decline in value speedily the seller must give the buyer reasonable notice of the time and place of the resale; and

(c) If the goods are not to be within the view of those attending the sale the notification of sale must state the place where the goods are located and provide for their reasonable inspection by prospective bidders; and

(d) The seller may buy.

(5) A purchaser who buys in good faith at a resale takes the goods free of any rights of the original buyer even though the seller fails to comply with one or more of the requirements of this section.

(6) The seller is not accountable to the buyer for any profit made on any resale. A person in the position of a seller (§ 2–707) or a buyer who has rightfully rejected or justifiably revoked acceptance must account for any excess over the amount of his security interest, as hereinafter defined (subsection (3) of § 2–711).

MD. CODE ANN., [COMM. LAW I] § 2–706 (1997).

*Lee Oldsmobile, Inc.,* 32 Md.App. at 564–565, 363 A.2d at 275. The resale was the result of an arm's length negotiation, and Petters has not contended otherwise. The price assigned to inventory that was agreed to by Luskins and Hudson in the resale transaction, namely 0.5125 of Luskins' cost was not appreciably less than the 0.69 agreed to by Petters and Luskins in the first sale transaction, and this is significant in light of the fact that the resale encompassed additional goods that were apparently of a lower than "factory-fresh" quality.

■ The concept of "identification" of goods to a contract is codified in Maryland Commercial Law Article Section 2–501.[3] " 'Identification' is the process that transforms unascertained goods into specific goods so that they become the goods to which the contract refers." William D. Hawkland, 1 HAWKLAND UCC SERIES § 2–501:02 (2000). *See also Bohle v. Thompson,* 78 Md.App. 614, 554 A.2d 818 (1989). "This concept is important for about twenty sections of Article 2 [§§ 2–103, 2–105(1), 2–107(2), 2–308(b), 2–321, 2–324, 2–401, 2–402, 2–502, 2–510(3), 2–513, 2–610(c), 2–613, 2–704, 2–706, 2–709(1)(b), 2–711, 2–

716, 2–722] where rights or remedies are made to depend on the fact that the contract involves specific, recognizable goods." 1 HAWKLAND UCC SERIES at § 2–501:01. For the purpose of claiming damages resulting from the resale of goods after breach of a sale contract, "the resale must be reasonably identified as referring to the broken contract." *Apex Oil Co. v. Belcher Co. of New York, Inc.,* 855 F.2d 997 (2d Cir.1988).

■ The Court has determined that the plaintiff has satisfactorily demonstrated that the inventory sold to Hudson was identifiable to the Petters contract. The law does not require that an aggrieved seller trace each and every item sold at resale to the inventory that was subject to the first sale in order to recover damages for breach of the original sale contract. Because the Hudson contract was not restricted to only "factory-fresh" items, that is, merchandise in original containers, the resale necessarily included some inventory in addition to that which Petters had agreed to purchase. Nevertheless, Luskins has satisfactorily traced the goods that were resold to Hudson to those that were identifiable to the Petters contract,

---

**3.** § 2–501 Insurable interest in goods; manner of identification of goods.

(1) The buyer obtains a special property and an insurable interest in goods by identification of existing goods as goods to which the contract refers even though the goods so identified are nonconforming and he has an option to return or reject them. Such identification can be made at any time and in any manner explicitly agreed to by the parties. In the absence of explicit agreement identification occurs

(a) When the contract is made if it is for the sale of goods already existing and identified;

(b) If the contract for the sale of future goods other than those described in paragraph (c), when goods are shipped, marked or otherwise designated by the seller as goods to which the contract refers;

(c) When the crops are planted or otherwise become growing crops or the young are conceived if the contract is for the sale of unborn young to be born within twelve months after contracting or for the sale of crops to be harvested within twelve months or the next normal harvest season after contracting whichever is longer.

(2) The seller retains an insurable interest in goods so long as title to or any security interest in the goods remains in him and where the identification is by the seller alone he may until default or insolvency or notification to the buyer that the identification is final substitute other goods for those identified.

(3) Nothing in this section impairs any insurable interest recognized under any other statute or rule of law.

MD. CODE ANN., [COMM. LAW I] § 2–501 (1997).

and has eliminated from the calculation those items that were sold from the Towson store between the abortive sale to Petters and the resale to Hudson. *See* Exhibits 6 and 7 to the Plaintiff's Damage Analysis [P. 28]. Contrary to Petters' assertions, a slightly higher inventory cost assigned by Luskins to the inventory resold to Hudson did not increase the deficiency between the two sales, but actually reduced it. Furthermore, the resale of additional inventory is not an impediment to Luskins' recovery of damages because (1) the sale of substantially all of the Luskins inventory to Hudson necessarily included that which was identifiable to the Petters contract, (2) the sale of merchandise in addition to that which Petters was obligated to purchase mitigated Luskins' damages by reducing the amount of Petters' liability for the breach, and (3) the private liquidation sale of substantially all of Luskins' remaining inventory was commercially reasonable.

The evidence indicated that the warehouse and the Woodlawn store had been closed, and that no merchandise was sold from either location and no inventory was delivered to the two locations between December 23, 1996, the date the Petters inventory was concluded, until January 10, 1997, when the resale to Hudson occurred. Therefore, the merchandise sold to Hudson from those two locations included the same inventory that was identified to the Petters contract.

To the extent that sales of Petters' inventory took place at the Towson store before the resale to Hudson, the plaintiff has reduced its claim for damages by deducting those items from its calculation of damages.

Having concluded that a comparison of the inventory sold to Hudson was the same inventory that Petters was obligated to purchase, the Court has computed the plaintiff's damages by calculating the difference in the amount realized from the resale of the merchandise. The plaintiff has adequately documented that the difference between the amount to have been realized from a sale to Petters and a resale to Hudson Salvage Inc., based upon the difference in sale price to Petters of 0.69 and that to Hudson of 0.5125, was a deficiency in the total amount of $94,594.07, representing damages in the resale of inventory at the warehouse of $76,569.68, at the Woodlawn store of $13,161.02 and at the Towson store of $4,863.37. This is the measure of damages by which this Court holds Petters to be liable to the plaintiff.

ORDER ACCORDINGLY.

### *ORDER ENTERING FINAL MONEY JUDGMENT*

PURSUANT to Bankruptcy Rule 7054 and Federal Rule 54, and the Court finding that there is no just reason for delaying entry of final judgment, it is

ORDERED that final judgment be and it is hereby ENTERED against the defendant, Petters Company, Inc., and in favor of the plaintiffs, Ashby Enterprises, Ltd., Luskins Appliances, Inc., Luskins, Inc., We Are Electronics Inc. and Sound and Sight, Inc., in the principal amount of Ninety-four Thousand Five Hundred Ninety-four Dollars and seven cents ($94,-594.07), plus prejudgment interest at the rate of 5.45% from December 27, 1996, to date hereof, and postjudgment interest at the rate of 6.052%, from date hereof, plus costs.

### *ORDER DETERMINING DAMAGES AGAINST DEFENDANT FOR BREACH OF CONTRACT AND GRANTING JUDGMENT FOR THE PLAINTIFF*

For reasons stated in the memorandum opinion filed simultaneously herewith, the

instant complaint is hereby GRANTED, and judgment is hereby GRANTED in favor of the plaintiffs, Ashby Enterprises, Ltd., Luskins Appliances, Inc., Luskins, Inc., We Are Electronics, Inc., and Sound and Sight, Inc., and against the defendant, Petters Company, Inc., in the total amount of Ninety-four Thousand Five Hundred Ninety-four Dollars and seven cents ($94,-594.07), plus prejudgment interest from December 27, 1996, to date hereof, at the rate of 5.45%, and postjudgment interest at the rate of 6.052%, from date hereof, plus costs.

SO ORDERED.