PETROLEO BRASILEIRO, S.A.,
PETROBRAS, Plaintiff,

v.

AMEROPAN OIL CORPORATION,
Defendant.

No. 73 C 1158.

United States District Court,
E. D. New York.

March 21, 1974.

Paul S. Aufrichtig, New York City, for plaintiff.

George J. Hammerman, New York City, for defendant.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff has moved for summary judgment in this diversity action to recover the unpaid balance of the purchase price for goods sold and delivered to defendant, asserting that all facts requisite for judgment stand admitted or are incontrovertible.

Plaintiff, a Brazilian corporation maintaining its principal office in Rio de Janeiro, is engaged in world-wide operations in all phases of the petroleum industry. It also has a branch office in New York City. Defendant, a New York corporation based in Syosset, Long Island, is engaged in buying, selling and trading of petroleum products in domestic and world-wide trades, sometimes acting as a principal and at other times as a broker.

The claim in suit arises out of a transaction negotiated by defendant, acting on its own behalf as buyer,[1] with Gambinifuel (cable code "Gadoil"), a cargo broker in Milan, Italy, who was then acting for plaintiff as seller. Defendant's answer and affidavit unqualifiedly admit that those negotiations ripened into an agreement between the parties evidenced by an exchange of telex cable communications between defendant and Gambinifuel, copies of which are annexed as exhibits to the parties' affidavits on the instant motion. The essential terms were that plaintiff would sell and deliver to defendant in December

1. Defendant had originally initiated the negotiations acting as a broker for a customer, Amerada Hess Petroleum Corporation ("Hessoil"), but became a principal after Hessoil requested cancellation of the proposed purchase offer. Affidavit of defendant's president, Rolf W. Wittich, par. 6 and Exh. D annexed thereto.

1972 a cargo of approximately 33,000 metric tons of low sulphur fuel oil of specified quality at U.S. $3.52 per barrel "CIF New York", the valid weights to be those "of the bill of lading." Defendant agreed to make payment in "cash against documents at 30 days date of the arrival of vessel in New York."

There is no question that plaintiff substantially—if not fully—performed the above agreement. Defendant admits receiving delivery of the purchased fuel oil in New York on or about December 23, 1972. The tanker bill of lading and loading inspection documents establish that when the vessel left Brazil on December 4, 1972, it carried 35,028 metric tons of fuel oil, equivalent to 34,475 long tons or 245,856 barrels.[2] Defendant also admits that when plaintiff presented its demand for payment of the agreed price of $865,415.16 thirty days after the delivery, defendant failed and refused to pay, although acknowledging here that that was the amount due.[3]

Subsequently, about June 4, 1973, defendant paid plaintiff $225,000 on account, leaving a balance of $640,415.16 which still remains unpaid even though it now appears that defendant resold the shipment to its customer, Hessoil.[4] It should be noted that defendant later tendered a check for $304,570.35, which plaintiff rejected and returned because defendant's transmittal letter described it as payment of "a balance held to your account in the sum of $304,570.35."[5] This so-called "balance" was derived from defendant's subtraction of the monetary value it placed upon two alleged counterclaims asserted in its answer, which it urges here in bar of the

summary judgment plaintiff seeks. To that contention we now turn.

■■■ Defendant's first counterclaim, while alleging unspecified "extra cost and expense incurred" owing to the tanker's delay in arrival and slow discharge, really focuses on a claimed delivery shortage of 8,787 barrels of cargo valued at $30,927.67.[6] Although such a counterclaim might be maintained in appropriate circumstances under N.Y. Uniform Commercial Code (UCC) § 2–714, McKinney's Consol.Laws c. 38, it would provide no excuse for defendant's failure to pay the substantial balance due for the fuel oil actually accepted, id. § 2–607(1). Nor, in light of the terms of purchase and sale here, would it constitute a valid set-off for the claimed deficiency of oil upon delivery.

■■■ The documentation supporting plaintiff's motion permits of no doubt that the oil shipment in question was consigned directly to defendant on a C.I.F. basis upon a tanker bill of lading issued in defendant's name. Title to the oil thus passed to defendant at the point of shipment together with the risk of any loss in transit. N.Y. UCC § 2–320, Official Comment 1. If loss occurred as claimed, defendant's recourse was to make claim under the "All Risks" insurance certificate issued in its name,[7] which it did not attempt to do until eight months afterwards.[8] Even then defendant withheld submission of proofs of claim to the insurer despite its assertion here that the shortage "can be fully documented by the reports of independent petroleum inspectors, Saybolt & Company, who attended the loading and discharging of this vessel."[9]

2. Affidavit of Henrique Porto, plaintiff's New York commerical assistant in charge of oil product sales, pp. 3–4, and Exhs. 2, 3 and 4 annexed thereto.

3. Aff. Wittich, *supra*, par. 17.

4. Aff. Wittich, *supra*, par. 16.

5. Aff. Porto, *supra*, Exhs. 6, 7.

6. Defendant's Answer, par. "SIXTH"; Aff. Wittich, *supra*, par. 17; see also Aff. Porto, ■■■■■

*supra*, Exh. 6. Because of this alleged shortage, defendant also claims a loss of "commissions of two cents a barrel or the sum of $4,917.14"—a claim not made in its answer, *supra*, and which presumably arises out of its resale of the shipment to Hessoil.

7. Aff. Porto, *supra*, Exh. 5.

8. Aff. Porto, *supra*, Exh. 19.

9. Aff. Wittich, *supra*, par. 15.

■ Moreover, defendant's contention that a true C.I.F. contract did not exist here because (1) payment was not to be made until thirty days after delivery, (2) plaintiff retained the original bill of lading for several days after delivery, and (3) plaintiff continues to retain the original certificate of insurance, is wholly without merit. As to (1), while a C.I.F. term normally requires defendant to make payment upon tender of the required documents, a variation in the contract as to date of payment, even if after delivery, is permitted and does not destroy its essential meaning; *i. e.*, that this was "a contract for proper shipment rather than one for delivery at destination." N.Y. UCC § 2–320, Official Comment 14. Since the term is so well understood, any commercially reasonable variation should not be allowed to destroy that meaning. *Id.* As to (2) and (3), defendant cites no authority for the remarkable proposition that an alleged breach of the contract alters its terms. Such an argument is patently frivolous; a breach may modify obligations under the contract, or even terminate it, but it does not operate to change the meaning to be given to an unambiguous term.

■ From an evidentiary standpoint, defendant has presented nothing but its bare assertion that shortage documentation does in fact exist. That does not suffice to controvert the Saybolt inspection documents plaintiff submitted, which verified the exact quantity of fuel oil loaded aboard the tanker in Brazil.[10] "A party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial, for in so doing he risks the possibility that there will be no trial." Donnelly v. Guion, 467 F.2d 290, 293 (2 Cir. 1972). If there was documentary evidence to support the assertion, Rule 56 required

defendant to come forward with it. In the absence of such contradicting evidence, which should clearly be available to defendant, its opposing affidavit reveals no genuine issue of material fact which would bar summary judgment for the balance due plaintiff on the latter's first cause of action.

There remains the question whether defendant's second counterclaim must be tried on the merits before plaintiff may have a judgment for the unpaid price of goods admittedly sold and delivered in December 1972. The claim in substance is that plaintiff breached an alleged subsequent agreement between the parties to ship defendant a second cargo of fuel oil upon the same terms as the first. Judgment for damages on that claim is sought in the amount of $248,000, which includes the identical $31,000 shortage claim alleged in the first counterclaim.

The respective affidavits and documentary exhibits on the present motion show the second counterclaim to be of equally dubious merit. Its underpinnings are (1) Gambinifuel's telex statement to defendant "We will probably have another cargo";[11] and (2) defendant's receipt of a tanker bill of lading and import and cargo manifests naming defendant as consignee of a shipment of 26,138 metric tons of fuel oil leaving Brazil on December 27, 1972 aboard the tanker "Presidente Getulio."[12] The statement in (1) above was made in Gambinifuel's final telex of November 13, 1972, confirming the terms on which the *first* cargo was to be sold to Hessoil, for whom defendant was then acting as agent, and before plaintiff agreed to the substitution of defendant as buyer of the first cargo.[13]

The second cargo, referred to in (2) above, appears to be a quite different situation. Upon receipt of the "Getulio" bill of lading documents, defendant sent

---

10. Aff. Porto, *supra*, Exh. 4.

11. Aff. Wittich, *supra*, Exh. E; Aff. Porto, *supra*, Exh. 1; Aff. Domenico Gambini and telex attached.

12. Aff. Wittich, *supra*, par. 16; Exhs. H–1, H–2 and H–3; Aff. Porto, *supra*, Exh. 8.

13. Aff. Wittich, *supra*, pars. 6–8, Exhs. A–F, incl.; Aff. Porto, *supra*, p. 3; Aff. Gambini, *supra*, p. 2.

Gambinifuel a telex acknowledging receipt and requesting:

"Pls confirm sale parallel Presidente Dutra [first cargo] subject finding suitable storage at our option either New York or Philadelphia." [14]

But defendant never received such a confirmation, as it admits.[15] Indeed, Gambini swears in his affidavit on this motion that his statement, (1) above, had nothing to do with "any particular offer or contractual undertaking" and points to the total absence of any reference to terms.[16] And plaintiff similarly disputes the contractual significance of the shipping documents relating to the "Getulio" cargo, exhibiting numerous telex cables between its Paris and Rio de Janeiro offices tending to show an error occurred because of confusion arising from defendant's previous role as agent for Hessoil.[17] In particular, a telex of January 9, 1973, indicates that the cargo in question was destined for Hessoil's St. Croix facility under a pre-existing contract plaintiff had with Hessoil—a contract the existence of which defendant's affidavit acknowledges.[18] And that is where the "Getulio" cargo ultimately went.

█ Although there are indications that defendant may fail to establish its second counterclaim, issues of material fact and credibility are presented which plainly cannot be resolved on this motion for summary judgment. See, e. g., Friedman v. Meyers, 482 F.2d 435, 439 (2 Cir. 1973), and cases cited therein. Foremost among such issues is the question of plaintiff's intent in consigning the second cargo aboard the "Getulio" to defendant and forwarding it the shipping documents. Was it done by error or with intent to conclude another deal with defendant through Gambini as broker? Defendant, at the time it was negotiating the first cargo deal *on Hes-*

*soil's behalf,* had requested Gambini to "Try for another cargo—firm—for a few days." [19] Certainly the first cargo deal was concluded on the basis of a commitment to Hessoil apparently amended without documentation to recognize *defendant* as the buyer.[20] And while plaintiff argues the unenforceability of any agreement to sell defendant the second cargo, plaintiff has not pleaded in its reply a defense of the statute of frauds as required by Rule 8(c), F.R.Civ.P.

█ The factual issues embedded in defendant's second counterclaim should not, however, preclude summary judgment in favor of plaintiff on its first cause of action. That cause of action seeks only payment of the balance due on an admittedly completed separate purchase and sale of goods. There are no valid set-offs and the unliquidated damages sought in the second counterclaim, which relates to an alleged separate and distinct transaction, did not relieve defendant of its obligation to pay for the goods it received and which it has since resold. If defendant is confident of the merits of its second counterclaim and wishes to secure future collection of an anticipated judgment, the provisional remedy of attachment is available since plaintiff is a foreign corporation. See Rule 64, F.R.Civ.P., and N.Y. CPLR § 6201, McKinney's Consol.Laws, c. 8.

Since plaintiff also seeks summary judgment with respect to its second cause of action, a word must be said about that claim. After repeating the allegations of the first cause of action, the second cause of action alleges that plaintiff sustained additional damages of $75,000 in banking charges because of defendant's nonpayment for the oil delivered. Plaintiff's affidavit merely explains the charges as "a penalty interest

14. Aff. Wittich, *supra,* par. 16, Exh. I.

15. Aff. Wittich, *supra,* par. 16 (p. 8).

16. Aff. Gambini, *supra,* p. 2.

17. Aff. Porto, *supra,* pp. 5–8, Exhs. 12–17.

18. Aff. Porto, *supra,* Exh. 16; Aff. Wittich, *supra,* par. 6 and Exh. D.

19. Aff. Wittich, *supra,* Exh. C.

20. Aff. Gambini, *supra,* p. 2; Aff. Porto, *supra,* p. 3; Aff. Wittich, *supra,* par. 8.

accruing at the rate of 10% per annum required by the Brazilian Exchange Regulations."[21] No further illumination is supplied by plaintiff's memorandum of law, indeed, not even the text of the regulations!

While defendant's answer wholly failed to respond to this claim, the court has accepted its counsel's assertion of a stenographic oversight and allowed the filing of an amended answer, which interposes a general denial to the claim. At the same time, the court afforded the parties an opportunity to supplement their affidavits and documentation so as to determine whether or not the second cause of action would permit of judgment thereon as a matter of law.

▉ Plaintiff's motion for summary judgment is, of course, an assertion that there is no genuine triable issue of material fact with respect to the merits of the second claim. The court agrees. But after careful consideration of the additional papers submitted, the court concludes that the judgment required on that claim must be one of dismissal as a matter of law for the reasons which follow.[22]

▉ The second cause of action read in the light of plaintiff's affidavit, *supra* n. 21, would appear at first blush to raise a question of foreign law, *i. e.*, the nature and effect of the Brazilian Exchange Regulations with respect to the sale in question. The determination of such a question is now treated as a ruling on a question of law. Rule 44.1,

F.R.Civ.P. But before that foreign law question is reached, it also appears that despite the international character of the sale, the parties are content to have their contract rights determined under New York law.[23] Under that law, in the absence of what appears from the contractual documents to be any specified elements of damages, N.Y. UCC § 2–719, plaintiff's action for the price may additionally include recovery for "incidental damages" resulting from defendant's breach. N.Y. UCC §§ 2–709, 2–710. However, "consequential damages" are not recoverable by the seller under the Code. See 2 R. Anderson, Uniform Commercial Code §§ 2–710:3, 2–708:15 (2d ed. 1971). *Compare* the seller's remedy under N.Y. UCC § 2–710 *with* the buyer's remedy under § 2–715.

While the distinction between the two is not an obvious one, the Code makes plain that incidental damages are normally incurred when a buyer (or seller) repudiates the contract or wrongfully rejects the goods, causing the other to incur such expenses as transporting, storing, or reselling the goods. On the other hand, consequential damages do not arise within the scope of the immediate buyer-seller transaction, but rather stem from losses incurred by the non-breaching party in its dealings, often with third parties, which were a proximate result of the breach, and which were reasonably foreseeable by the breaching party at the time of contracting. Hadley v. Baxendale, 9 Exch. 341, 156 Eng.

---

21. Aff. Porto, *supra*, p. 4.

22. There is no question that, in this circuit, if the moving papers establish that defendant is entitled to such relief, summary judgment may be granted dismissing plaintiff's cause of action, despite the absence of a formal cross-motion by defendant. Abrams v. Occidental Petroleum Corp., 450 F.2d 157, 165–166 (2 Cir. 1971), aff'd sub nom. Kern County Land Co. v. Occidental Petroleum Corp., 411 U.S. 582, 93 S.Ct. 1736, 36 L.Ed. 2d 503 (1973) ; Local 33, Int'l Hod Carriers v. Mason Tenders District Council, 291 F.2d 496, 505 (2 Cir. 1961). *See* 6 J. Moore, Federal Practice ¶ 56.12 (2d ed. 1965).

23. Defendant's Memo. at 8–10. Plaintiff's reply memorandum also makes clear it considers the question of the breach of the CIF contract referable to New York law, and the second cause of action to be based on damages arising from that breach. Plaintiff's belated claim that Brazilian law controls the second cause of action is thus of no avail. While a referral to Brazilian law might be essential for a factual determination of the scope and extent of the claim made, New York law, whether by agreement of the parties or a routine analysis of the conflict of laws question, controls the rights and obligations of the parties upon a breach of the contract in question. See N.Y. UCC § 1–105(1).

Reprint 145 (1854). See 51 N.Y.Jur. Sales, § 236 (1966).

 The court is of the opinion that whatever penalties may have been imposed on plaintiff as a result of defendant's failure to pay the price on the date due under the contract, they stem from plaintiff's dealings with those not a party to the contract and are not properly characterized as incidental damages. This view is underscored by plaintiff's own treatment of the damages in the complaint not as a mere reimbursment for expenses incurred, but as an independent cause of action, arising out of a separate fine or penalty.[24]

Hence plaintiff's claim is not cognizable under the Code, and is maintainable only if otherwise allowed by prior New York law. N.Y. UCC §§ 1–103, 1–106(1). Under the former N.Y. Personal Property Law § 144, McKinney's Consol.Laws, c. 41, which in pertinent part § 2–709 of the UCC replaced, the loss caused by failure to pay for the goods is the amount of the purchase price. Haughey v. Belmont Quadrangle Drilling Corp., 284 N.Y. 136, 29 N.E.2d 649, 130 A.L.R. 1331 (1940). See also annotations 25 and 52 to N.Y. Personal Property Law § 144 (McKinney's 1962). While some cases under § 144 may be read as making that section coextensive with the seller's right to incidental damages under the Code, the court has found no authority, nor has plaintiff provided the court with any in its memoranda, which would suggest that inconsequential damages of the type alleged here are cognizable under old or new New York law in the seller's action for the price. Hence plaintiff's remedy is properly restricted to its action for the price and interest thereon at the legal rate in New York, and proof of the penalties imposed by Brazilian law is not relevant to this case.

Accordingly, plaintiff's motion for summary judgment is granted to the ex-

tent of awarding it recovery of the sum of $640,415.16 as against the defendant, together with interest as follows: from January 22, 1973 to and including June 4, 1973, computed on the sum of $865,415.16, and from June 5, 1973 to the date of payment, computed on the sum of $640,415.16.

There being no just reason for delay, the Clerk is directed, pursuant to Rule 54(b), F.R.Civ.P., to enter final judgment on the first cause of action in favor of plaintiff in accordance with the foregoing, and dismissing the second cause of action. The form of the judgment is to be settled by the parties upon due notice. The action shall continue as to defendant's second counterclaim, which is hereby deemed severed for purposes of further proceedings herein.

So ordered.

---

24. Cf. New York cases which characterized penalties imposed on a non-breaching buyer as a result of the seller's breach as conse-quential damages. 51 N.Y.Jur. Sales, § 236 at 296 n. 19 (1966).