460 A.2d 343

**H.B. ALEXANDER & SON, INC.**

**v.**

**MIRACLE RECREATION EQUIPMENT COMPANY.**

Superior Court of Pennsylvania.

Argued Jan. 26, 1983.

Filed May 13, 1983.

1

Robert B. Mulhern, Jr., Philadelphia, for appellant.

Richard H. Wix, Harrisburg, submitted a brief on behalf of appellee.

Before WICKERSHAM, CIRILLO and WATKINS, JJ.

CIRILLO, Judge:

This is an appeal from an Order of the Court of Common Pleas of Dauphin County, dated July 6, 1981, whereby the appellant's motions for a New Trial and Judgment N.O.V. were denied and judgment was entered in favor of the appellee in accordance with the verdict of the jury.

In April 1979 the appellee, H.B. Alexander & Son, Inc., seeking to become the general contractor in the expansion of Penn State University's Beaver Stadium, sent a written request to the appellant, Miracle Recreation Equipment Company, to submit a bid for seating materials. The appellant was advised that H.B. Alexander's bid would have to be presented to Penn State by May 9, 1979. On May 7 the appellant's salesman telephoned an employee of H.B. Alexander and offered to supply seating materials for $24,022.00. The appellee utilized this bid in submitting its own bid to Penn State. Subsequently, H.B. Alexander was awarded the stadium contract and thereafter advised the appellant of this fact in a telephone conversation. Several

days later, H.B. Alexander sent a written vendor's order to the appellant in accordance with its quotation. Some forty days afterwards, the appellant advised H.B. Alexander that its quotation was not a fixed price but merely an estimate. H.B. Alexander purchased the materials elsewhere and brought suit against the appellant for $10,478.00, the difference between the appellant's quotation and the price they actually paid for the materials. Following a trial before the Honorable John C. Dowling and a jury, H.B. Alexander was awarded a verdict in the amount claimed plus interest and costs. Post-trial motions were filed and denied, and this appeal followed.

The question presented by the appellant to this Court on appeal is whether or not the trial court erred in refusing to apply the Statute of Frauds to the facts of this case.

The parties agree that they are merchants within the context of the Uniform Commercial Code. Regarding the formal requirements of the Statute of Frauds, the Pennsylvania Uniform Commercial Code provides:

(b) Writing confirming contract between merchants.— Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (a) against such party unless written notice of objection to its contents is given within ten days after it is received.

The Act of November 1, 1979, P.L.255, No. 86, Sec. 1, effective January 1, 1980, 13 Pa.C.S.A. § 2201.[1]

The appellant alleges that the vendor's order is insufficient to satisfy the Statute of Frauds since it contains conditions precedent to the existence of a contract,[2] and it does not

---

**1.** 13 Pa.C.S.A. § 2201 *et seq.* re-enacts the Pennsylvania Uniform Commercial Code (formerly at 12A P.S. § 2-201 *et seq.*) without change in substance.

**2.** The appellant claims that the conditions precedent in the vendor's order are found in the words, "to make any agreement valid sign, date

state that it is in confirmation of any contract. We see no need to reach the merits of these allegations.

Our attention, rather, is summoned to the intent of the legislature as embodied in section 1102 of the Uniform Commercial Code as follows:

### § 1102. Purposes; rules of construction; variation by agreement

(a) Title to be liberally construed.—This title shall be liberally construed and applied to promote its underlying purposes and policies.

(b) Purposes and policies of title.—Underlying purposes and policies of this title are:

(1) To simplify, clarify and modernize the law governing commercial transactions.

(2) To permit the continued expansion of commercial practices through custom, usage and agreement of the parties.

(3) To make uniform the law among the various jurisdictions.

(c) Variation of title by agreement.—The effect of provisions of this title may be varied by agreement, except as otherwise provided in this title, and except that the obligations of good faith, diligence, reasonableness and care prescribed by this title may not be disclaimed by agreement but the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable.

(d) Effect of "unless otherwise agreed".—The presence in certain provisions of this title of the words "unless otherwise agreed" or words of similar import does not imply that the effect of other provisions may not be varied by agreement under subsection (c).

The Act of November 1, 1979, P.L.255, No. 86, § 1, 13 Pa.C.S.A. § 1102.

and return copy at once. Advise definite shipping date and if by rail or truck."

Furthermore, Judge Watkins in speaking for a panel of this Court expressed, "The purpose of the Uniform Commercial Code which was written in terms of current commercial practices, was to meet the contemporary needs of a fast moving commercial society." *Arcuri v. Weiss*, 198 Pa.Super. 506, 510, 184 A.2d 24, 26 (1962).

Testimony of agents and witnesses for both parties indicates that the usual manner of conducting business between general contractors, subcontractors and suppliers is based upon oral bids received over the telephone, often within hours of the time when the general contractor will submit a bid to the owner or developer. Moreover, testimony evidenced that this procedure was followed by the present parties in their previous transactions.[3]

In *Duffee v. Judson*, 251 Pa.Super. 406, 414, 380 A.2d 843, 847 (1977), we stated:

We believe that 2–201 of the UCC by its own terms, permits a party to waive the statute of frauds. Moreover, 2–201 does not by its terms operate as a bar nor does it destroy a plaintiff's cause of action. In fact, the Code provides that under certain circumstances, oral contracts may be enforced.

It is essential that general contractors be allowed to accept and rely on telephone bids from subcontractors in arriving at their final bids since time is often an important

---

3. Testimony, as mentioned above, is relevant to the interpretation of an agreement as Section 2208(b) of the U.C.C. expresses:

   (b) Construction of express terms and performance.—The express terms of the agreement and any such course of performance, as well as any course of dealing and usage of trade, shall be construed whenever reasonable as consistent with each other; but when such construction is unreasonable, express terms shall control course of performance and course of performance shall control both course of dealing and usage of trade (section 1205).

   The Act of November 1, 1979, P.L.255, No. 86, Sec. 1, 13 Pa.C.S.A. § 2208(b).

   Furthermore, the Comment following 12A P.S. § 2–208 states:

   Purposes:

   2. Under this section a course of performance is always relevant to determine the meaning of the agreement. Express mention of course of performance elsewhere in this Article carries no contrary implication when there is a failure to refer to it in other sections.

factor. Clearly the appellant was aware of this generally accepted custom and in fact often used this practice in its transactions with general contractors. Likewise, we note that the appellant was aware that H.B. Alexander relied on its quotation in making its bid, the appellant knew that H.B. Alexander was awarded the construction contract, and the appellant took over forty days to renege on its quoted price after receiving the vendor's order containing detailed items. Also, at no prior time did the appellant give any indication that its quotation was merely an estimate.

Keeping in mind the guidance furnished by our courts and legislature, we find that the parties had entered into a binding oral contract and that through its conduct and by its course of dealing, the appellant waived the provisions of the Statute of Frauds in the Uniform Commercial Code in the current action. This holding is consistent with the language of the Superior Court in *Axler v. First Newport Realty Investors*, 279 Pa.Super. 14, 17, 420 A.2d 720, 722 (1980) which voiced:

> The purpose of the statute "is the prevention of successful fraud by inducing the enforcement of contracts that were never in fact made. It is not to prevent the performance or the enforcement of oral contracts that have in fact been made; ...

Having found no error committed by the trial court in upholding this contract, we therefore affirm judgment.

Order and judgment affirmed.