## ATLANTIC PAPER BOX CO.

v.

## WHITMAN'S CHOCOLATES and Pet, Incorporated.

### Civ. A. No. 93–5997.

United States District Court,
E.D. Pennsylvania.

Feb. 3, 1994.

James Hall, Michael S. Paul, Pearlstein/Salkin Assoc., P.A., Lansdale, PA, for plaintiff.

Charles F. Forer, Hangley, Connolly, Epstein, Chicco, Foxman & Ewing, Philadelphia, PA, for defendant Pet, Inc.

### MEMORANDUM AND ORDER

VanARTSDALEN, Senior District Judge.

### I. INTRODUCTION

Plaintiff, Atlantic Paper Box Co. (Atlantic), filed this action against Whitman's Chocolates (Whitman's) and Pet Incorporated (Pet) on November 12, 1993 seeking damages under contract, promissory estoppel and loss of business opportunity theories. Counts I and II are claims for breach of contract; counts III and IV are claims based on promissory estoppel; counts V is a claim for loss of business opportunity; and count VI is a claim for intentional interference with a contractual relationship. Subsequently, by stipulation filed December 21, 1993, Whitman's was dismissed as a party, and Count VI, relating to Pet's intentional interference with the contractual relations between Whitman's and plaintiff, was dismissed with prejudice. Apparently, the parties agreed to this stipulation because Whitman's is neither a corporation nor a business entity as originally averred by plaintiff in its complaint,[1] and consequently the only contractual relationship that could have existed was between Atlantic and Pet. (Filed Doc. No. 4.)

Atlantic avers that it is in the business of producing specialty candy boxes for candy manufacturers, "primarily heart-shaped boxes used for Valentine's Day candy." (Com-

---

1. The evidence describes that Whitman's is a named division of Pet.

plaint at ¶ 5.) Atlantic alleges that it has produced candy boxes for defendant "in recent years," which has accounted for approximately 40% of plaintiff's business. (Complaint at ¶ 6.) According to plaintiff and presumably consistent with industry practice,[2] discussions between plaintiff and defendant began in October 1992 concerning Whitman's candy box needs for Valentine's Day 1994. (Complaint at ¶ 8.) Plaintiff further alleges that it received assurances in December that defendant would place orders with plaintiff for 1994 Valentine's Day candy boxes and that on or about February 16, 1993, defendant's authorized agent gave plaintiff purchase order numbers and other specifics by telephone which amounted to an order totaling $304,557.50. (Complaint at ¶ 10, 11.)

In addition, plaintiff alleges that on February 24, 1993 defendant, by telephone, placed additional purchase orders for boxes with specific styles, quality, quantity and prices resulting in an order which totaled $1,076,095.50 when combined with the previous order. (Complaint at ¶ 12.) Plaintiff also contends that defendant requested that plaintiff "reserve its manufacturing capacity to accommodate this additional order." (*Id.*)

Plaintiff alleges that "during the course of negotiations" plaintiff, knowing that Whitman's was for sale, asked defendant whether Russell Stover was a potential buyer of Whitman's. (Complaint at ¶ 13.) This information was apparently important to plaintiff because Russell Stover produced its own candy boxes and therefore would not be a customer of plaintiff for candy boxes if it purchased Whitman's. According to plaintiff, defendant gave assurances that Russell Stover would not be a buyer of Whitman's. (*Id.*) Subsequently, on March 1, 1993, defendant allegedly notified plaintiff that all orders were to be put on hold pending negotiations for the sale of Whitman's to two potential buyers neither of which were identified as Russell Stover. (Complaint at ¶ 14.) On March 8, 1994, plaintiff alleges that defendant notified it that Russell Stover would purchase Whitman's and, that as a result, all

business with Atlantic was terminated. (Complaint at ¶ 15.)

Essentially, plaintiff's claims relate to the alleged contractual relationship that existed between Atlantic and Pet. Plaintiff has sought relief on both contractual and promissory estoppel theories. Additionally, plaintiff has sought damages for "loss of business opportunity," by averring that as a result of defendant's actions plaintiff suffered an "immediate and irreparable diminution in value," causing a potential buyer of plaintiff to withdraw an offer to purchase the company. (Complaint at ¶¶ 56–57.) Defendant has moved to dismiss counts III and IV, relating to promissory estoppel theories and count V, relating to loss of business opportunity, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claims upon which relief can be granted. No motion has been filed as to counts I and II for breach of contract of sale of specially manufactured goods.

## II. DISCUSSION

### A. Motion to Dismiss

A motion to dismiss tests the legal sufficiency of the complaint. *See Sturm v. Clark*, 835 F.2d 1009, 1011 (3d Cir.1987). A court may grant a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted only if it appears beyond a doubt that plaintiff can prove no facts to support the relief requested. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Commonwealth ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 179 (3d Cir.1988). In deciding a motion to dismiss, all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989).

### B. Choice of Law

A federal court, sitting in diversity, must apply the choice of law rule of the

---

**2.** Plaintiff alleges that "[i]t is the practice in the industry of making boxes for Valentine's Day candies that orders are placed approximately fif-teen (15) months in advance of when the boxes are to be sold." (Complaint at ¶ 7.)

forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Because the alleged contract clearly involves the sale of goods, *see* U.C.C. § 2–105(a), 13 Pa.Cons.Stat.Ann. § 2105(a),[3] the choice of law provision of Pennsylvania's Uniform Commercial Code (UCC) would be an appropriate starting point. U.C.C. § 1–105(a), 13 Pa.Cons.Stat.Ann. § 1105(a). This provision, however, does not provide much guidance. It merely states that when the parties have failed to agree on the applicable choice of law, Pennsylvania's UCC "applies to transactions bearing an appropriate relation to this Commonwealth." *Id.*

■ I turn, then, to the choice of law rules as they pertain to contract cases. "[U]nder Pennsylvania's choice-of-law principles, the place having the most interest in the [contract] and which is most intimately concerned with the outcome is the forum whose law should be applied." *In re Complaint of Bankers Trust Co.*, 752 F.2d 874, 882 (3d Cir.1984); *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796, 805–06 (1964). Under this approach, the places of negotiation, contracting, and performance, the location of the subject matter of the contract, and the citizenship of the parties are all considered. *Reading Metal Craft Co. v. Hopf Drive Associates*, 694 F.Supp. 98, 105 (E.D.Pa.1988).

Clearly, under these principles, either Pennsylvania or Massachusetts[4] law applies. Defendant has maintained that the parties in previous negotiations or contracts had chosen Pennsylvania law as governing their relationship. (Def.'s Mem.Supp.Mot. to Dismiss at 3.) Plaintiff has not disputed this contention. Moreover, both defendant and plaintiff have cited mainly Pennsylvania and Third Circuit law in their briefs. Neither party has cited any Massachusetts law. Consequently, I will

apply the law of the Commonwealth of Pennsylvania to this action.[5]

■ I must follow state law as interpreted by the Supreme Court of Pennsylvania. *Borman v. Raymark Indus., Inc.*, 960 F.2d 327 (3d Cir.1992). Where Pennsylvania's highest court has not spoken definitively on an issue, however, "decisions of an intermediate state court should not be disregarded unless other 'persuasive data'" indicate that the Supreme Court of Pennsylvania would decide otherwise. *Fisher v. USAA Casualty Ins. Co.*, 973 F.2d 1103, 1105 (3d Cir.1992) (quoting *West v. American Tel. & Tel.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940)).

### C. *Promissory Estoppel*

Defendant has moved to dismiss counts III and IV for failure to state claims upon which relief can be granted. These counts attempt to state claims founded on doctrines of promissory estoppel. Defendant contends that the UCC statute of frauds provision bars such an action. U.C.C. § 2–201, 13 Pa.Cons. Stat.Ann. § 2201.

■ Before consideration of defendant's contention that plaintiff's promissory estoppel claims are barred by the statute of frauds, the relationship between counts I and II, relating to breach of contract, and counts III and IV, relating to promissory estoppel must be examined. Under Pennsylvania law the doctrine of promissory estoppel can be invoked to create a binding promise in the absence of or as a substitute for consideration. *See Cardamone v. University of Pittsburgh*, 253 Pa.Super. 65, 384 A.2d 1228, 1233 (1978). Essentially, the doctrine enables a party to enforce a promise made without consideration when there has been a foreseeable and detrimental reliance on the promise and when injustice can only be avoided by enforcing the promise. *See In re*

---

**3.** " 'Goods' means all things (including specially manufactured goods) which are moveable at the time of identification to the contract for sale...." U.C.C. § 2–105(a).

**4.** Atlantic's corporate offices and place of business from which all relevant communications and transactions occurred is Massachusetts.

**5.** In addition, there is no indication that there is any substantive difference between the relevant law of Pennsylvania and Massachusetts.

*Flying W Airways, Inc.,* 341 F.Supp. 26, 74 (E.D.Pa.1972). Only when the formal requirements of consideration have not been met may a party attempt to invoke the doctrine. *See Carlson v. Arnot–Ogden Memorial Hosp.,* 918 F.2d 411, 416 (3d Cir.1990). Consequently, if Counts I and II are ultimately found to have merit, *i.e.* a valid contract existed between the parties, then relief under a promissory estoppel theory would be unwarranted. *Id.*

■■■ Although it would appear that plaintiff has pled inconsistent theories, federal rules allow pleading in the alternative. Just as courts have allowed plaintiffs to pursue alternative theories of recovery based on both breach of contract and unjust enrichment even when the existence of a valid contract would preclude recovery under unjust enrichment, plaintiff may presently state claims based on promissory estoppel if the claims are not barred by the statute of frauds. *See, e.g., United States v. Kensington Hosp.,* 760 F.Supp. 1120, 1135 (E.D.Pa. 1991); Fed.R.Civ.Proc. 8.

### 1. *Statute of Frauds Defense*

■■■ Under Federal Rule of Civil Procedure 8(c), the statute of frauds constitutes an affirmative defense to a civil action. Generally, such an affirmative defense is raised by a party in its responsive pleading. *See* Fed.R.Civ.P. 8(c). However, in the Third Circuit a statute of frauds defense may be raised by a Rule 12(b)(6) motion to dismiss if "the defect appears on the face of the plead-

ing." *Continental Collieries, Inc. v. Shober,* 130 F.2d 631, 635–36 (3d Cir.1942); *Simmons Oil Corp. v. Bulk Sales Corp.,* 498 F.Supp. 457, 460 (D.N.J.1980); 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 356 (2d ed. 1990). For example, in *Simmons,* the court found that the plaintiff's complaint raised a statute of frauds bar on its face because "[t]he complaint refers specifically to the 'oral sales contract.'" 498 F.Supp. at 460; *cf. Currier v. Knapp,* 442 F.2d 422, 423 (3d Cir.1971) (concluding that under those facts "defendants were required to file an answer to the complaint in order to raise the statute of frauds"). Because plaintiff's complaint clearly raises a statute of frauds defect on its face, as it refers only to oral negotiations creating alleged contractual obligations, defendant may utilize a 12(b)(6) motion to dismiss based on the statute of frauds.

■■■ The applicable provisions of the Pennsylvania UCC govern the present action. On its face, defendant's argument that the Pennsylvania UCC statute of frauds section bars a claim for promissory estoppel appears correct. Defendant contends that the express provisions of section 2–201 bar any claim that does not comply with either the writing requirements or the enumerated exceptions contained in the provisions of statute of frauds.[6] Plaintiff, quite rightly, does not take issue with this interpretation.[7] Instead, plaintiff argues that defendant has waived the statute of frauds defense.

Plaintiff relies on *H.B. Alexander & Son, Inc. v. Miracle Recreation Equip. Co.,* 314

---

6. The general rule under the statute of frauds is that a contract for the sale of goods for the price of $500.00 or more is unenforceable unless "there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought." U.C.C. § 2–201(a). There are three enumerated exceptions to this general rule: (1) specially manufactured goods when there has been "made either a substantial beginning of their manufacture or commitments for procurement;" (2) the party against whom enforcement is sought admits that a contract was made; and (3) "goods for which payment has been made and accepted or which have been received and accepted." U.C.C. § 2–201(c).

7. Although courts in other jurisdictions have differed on the availability of a promissory estoppel

claim otherwise barred by the statute of frauds, *see* Vitauts M. Gulbis, Annotation, *Promissory Estoppel as Basis for Avoidance of UCC Statute of Frauds (UCC § 2–201,* 29 A.L.R.4th 1006 (1984), I believe that the Supreme Court of Pennsylvania would bar such a claim. It is well settled law in Pennsylvania that "the principle of estoppel may not be invoked against the operation of the statute of frauds" in land-sale contracts. *Polka v. May,* 383 Pa. 80, 118 A.2d 154, 156 (1955). Although I have not been directed to any Pennsylvania authority on point, I predict that the *Polka* holding would be extended to sale of goods actions under the UCC. *See International Prods. & Technologies, Inc. v. IOMEGA Corp.,* No. 88–7004, 1989 WL 138866 at *5 (E.D.Pa. Nov. 15, 1989), *aff'd mem.,* 908 F.2d 962 (3d Cir.1990).

Pa.Super. 1, 460 A.2d 343 (1983), for the proposition that a promissory estoppel theory can be maintained despite an apparent statute of frauds bar when the party asserting the statute of frauds defense has waived the defense. *H.B. Alexander & Son* involved a contractor and supplier in a construction project. The supplier, by telephone, quoted a price for goods needed by the contractor. The contractor then used the price in its bid for the project. After the contractor was awarded the project, it sent a written order to the supplier in accordance with the price quotation. Forty days later the supplier notified the contractor that its quotation was merely an estimate. Under those facts, the Superior Court of Pennsylvania held that the conduct and course of dealings of the parties resulted in waiver of the UCC statute of frauds provisions. *Id.*, 460 A.2d at 345. The court relied on testimony given during the trial, which indicated that "the usual manner of conducting business between general contractor and subcontractors and suppliers is based upon oral bids received over telephone, often within hours of the time when the general contractor will submit a bid to the owner or developer." *Id.*

Plaintiff alleges in its complaint that "[i]t is the practice in the industry of making boxes for Valentine's Day candies that orders are placed approximately fifteen (15) months in advance of when the boxes are to be sold." (Complaint at ¶ 7.) Plaintiff further alleges that there was an agreement, which was recognized by both parties, by the telephone conversation of February 16, 1993, which was further confirmed by the issuance of purchase order numbers. (Complaint at ¶ 24.) These allegations provide a sufficient basis for denying defendant's motion to dismiss.

Defendant, in its reply to plaintiff's response to the motion to dismiss provides four reasons to support its view that "plaintiff's reliance on waiver is without legal merit." (Reply to Pl.'s Resp. at 2.) First, defendant argues that because plaintiff's complaint does not mention waiver, the claim cannot be raised now in response to a statute of frauds defense. Although this argument might have superficial appeal, it is without merit. On a motion to dismiss, I must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom. *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989). Plaintiff has alleged facts in the complaint that reveal that a course of dealings between the parties existed. Plaintiff need not expressly state that this course of dealings constituted waiver.

■ No cases were brought to my attention regarding the raising of waiver of the statute of frauds in response to a motion to dismiss based on the statute of frauds. Courts, however, have dealt with analogous situations involving the running of the statute of limitations. Like a statute of frauds defense, a statute of limitations defense is an affirmative defense under Federal Rule of Civil Procedure 8(c). Therefore, a statute of limitations defense, like a statute of frauds defense, may be raised by a motion to dismiss if the defect appears on the face of the pleading. *See Hanna v. United States Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir.1975); *Gee v. CBS, Inc.*, 471 F.Supp. 600 (E.D.Pa.1979), *aff'd mem.*, 612 F.2d 572 (3d Cir.1979). The Third Circuit has ruled that when a motion to dismiss is advanced on the ground that it is barred by the statute of limitations, "[t]he question to be answered thus becomes whether the assertions of the complaint, given the required broad sweep, *would permit adduction of proofs that would provide a recognized legal basis for avoiding the statutory bar.*" *Leone v. Aetna Casualty & Surety Co.*, 599 F.2d 566, 567 (3d Cir.1979) (emphasis added). Thus, plaintiff's complaint need not specifically plead an exception to a statute of frauds bar, but it must permit me to conclude that plaintiff has alleged facts such that it could potentially prove that an exception to the statute's bar existed. Applying this standard in the instant case leads me to conclude that the complaint, liberally read, contains sufficient allegations that defendant has waived the statute of frauds defense to avoid dismissal. Because waiver is a recognized exception to the Pennsylvania UCC statute of frauds provisions, the motion to dismiss will be denied.

Second, defendant argues that waiver, through a course of dealing, "should not become a judicially-created exception to the

present [ ] statutory exceptions specified in the UCC." (Reply to Pl.'s Resp. at 5.) Even though defendant makes a compelling argument for limiting the exceptions to the express statutory exceptions of the statute of frauds bar, I am reluctant to second guess the Superior Court of Pennsylvania's analysis in *H.B. Alexander & Son*.[8] Defendant has not offered any "persuasive data" that would indicate, at least to me, that the Supreme Court of Pennsylvania would decide otherwise. *See Fisher*, 973 F.2d at 1105.

Third, defendant asserts that even if waiver were an exception to the UCC's statute of fraud provisions, it does not apply in this case. Defendant attempts to distinguish *H.B. Alexander & Son* from the present action. Defendant stresses that subcontractor price quotations are made under extreme time pressure, *i.e.*, a matter of hours, while the time pressure involved in this case was a matter of months. This argument is better left for trial or a summary judgment motion, when defendant can then attempt to argue that after considering all the facts, plaintiff has failed to support its contention that defendant has waived the statute of frauds defense. In the context of this motion to dismiss, plaintiff has succeeded in stating a claim, even though, hypothetically, plaintiff may eventually be unable to prove that the waiver exception applies in this case.

Last, defendant maintains that even if waiver could be considered an exception to the statute of frauds, this exception would only apply to count III and not count IV.[9] Defendant contends that count IV should be dismissed because plaintiff has not established a "course of dealing" for the alleged February 24, 1993 agreement. Defendant argues that because no purchase order numbers were ever communicated for the alleged February 24, 1993 agreement, defendant did

not, and could not, conform to any "course of dealing" as to this claim. Again, plaintiff alleges that the practice in the industry, in addition to the dealings between the parties constituted a waiver of the statute of frauds. (Complaint at ¶¶ 7, 24.) Plaintiff does not rely exclusively on the issuance of purchase order numbers. Because there are sufficient allegations contained in the complaint to withstand this motion to dismiss, counts III and IV of plaintiff's complaint will remain and defendant's motion to dismiss as to those counts will be denied.

### D. *Loss of Business Opportunity*

 Count V of plaintiff's complaint attempts to state a claim for "loss of business opportunity." Atlantic alleges that as a "direct and proximate result" of defendant's actions, Atlantic suffered an "immediate and irreparable diminution of value," which caused a potential buyer of Atlantic to withdraw its offer to purchase Atlantic. (Complaint at ¶¶ 55–57.) Plaintiff is seeking damages in the amount of at least $1,025,000.00. Defendant argues that this count should be dismissed because it is an attempt by a seller to collect consequential damages, which are barred under the UCC.

Section 1–106 of the UCC provides that remedies are to be liberally administered such that "the aggrieved party may be put in as good position as if the other party had fully performed *but neither consequential or special nor penal damages may be had except as specifically provided in this title or by other rule of law.*" 13 Pa.Cons.Stat.Ann. § 1106 (emphasis added). Comment 3 to this section states that consequential damages "are not defined in the Code, but are used in the sense given them by the leading cases on the subject." Unfortunately, Pennsylvania courts have not clearly defined con-

---

8. Defendant makes the point that the official comment to section 1–205 states that "course of dealing" cannot be used to comply with the statute of frauds. The quoted language utilized by defendant, however, deals with "usage of trade" and *not* with "course of dealing." *See* 13 Pa.Cons.Stat.Ann. § 1205 cmt. ¶ 4.

9. In Count III, plaintiff states a promissory estoppel claim for the initial order that defendant allegedly placed with plaintiff, by telephone, on

February 16, 1993. On this date, defendant allegedly provided plaintiff with purchase order numbers for a contract totalling $304,557.00. (Complaint at ¶ 35.) In Count IV plaintiff states a claim for an alleged second order that was placed by telephone on February 24, 1993. (Complaint at ¶ 41.) Plaintiff does not allege that defendant provided plaintiff with purchase order numbers for this second order.

sequential damages. Instead, the cases merely state that consequential damages are recoverable if they are "reasonably foreseeable at the time the contract was made." *See, e.g., Frank B. Bozzo, Inc. v. Electric Weld Div.*, 283 Pa.Super. 35, 423 A.2d 702, 709 (1980), *aff'd per curiam*, 495 Pa. 617, 435 A.2d 176 (1981).[10] A "leading case on the subject" has enunciated a more precise definition. In *Petroleo Brasileiro, S.A., Petrobras v. Ameropan Oil Corp.*, 372 F.Supp. 503, 508–09 (E.D.N.Y.1974), the court observed that:

> While the distinction between [incidental and consequential damages] is not an obvious one, the Code makes plain that incidental damages are normally incurred when a buyer (or seller) repudiates the contract or wrongly rejects the goods, causing the other to incur such expenses as transporting, storing, or reselling the goods. On the other hand, consequential damages do not arise within the scope of the buyer-seller transaction, but rather stem from losses incurred by the non-breaching party in its dealings, often with third parties, which were a proximate result of the breach, and which were reasonably foreseeable by the breaching party at the time of contracting. *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng.Rep. 145 (1854).

*See* 3 William D. Hawkland, UCC Series § 2–710:01 (1984) (citing *Petroleo Brasileiro* as exemplifying the general rule).

Under this definition, plaintiff's claim for relief in count V clearly is an attempt to obtain consequential damages. Plaintiff's claim is based on a "loss business opportunity" with a third party; it does not arise directly "within the scope of the buyer-seller transaction." Therefore, unless (1) consequential damages are "specially provided" in the sellers list of remedies or (2) another "rule of law" provides plaintiff with the opportunity to assert a claim for the recovery of these damages, I must grant defendant's motion to dismiss.

**10.** Although this case deals with a buyer's remedy for consequential damages under section 2–715, it cites the general rule for consequential

### 1. *Consequential Damages under the UCC*

The seller's remedies for breach of contract are set forth in sections 2–703 through 2–710, 13 Pa.Cons.Stat.Ann. §§ 2702–2710. Under these provisions, the *seller* may (1) withhold delivery of goods, 2–703; (2) stop delivery by a bailee, 2–705; (3) identify goods to the contract notwithstanding breach or salvage unfinished goods, 2–704; (4) resell and recover the difference between the contract price and the resale price, 2–706; (5) recover damages for nonacceptance or repudiation, which is measured in terms of either lost profit or lost volume as a result of the canceled sale, 2–708; (6) seek an action for the price of the goods, 2–709; (7) cancel the contract, 2–703; or (8) recover incidental damages defined as "any commercially reasonable charges, expenses or commissions incurred ... resulting from the breach," 2–710.

Conspicuously missing from the above list of remedies is an action to recover consequential damages. In contrast, section 2–715, 13 Pa.Cons.Stat.Ann. § 2715, specifically grants to the *buyer* the remedy of collecting consequential damages. As a result of this statutory language, sellers clearly cannot recover consequential damages under the UCC. *See Associated Metals & Minerals Corp. v. Sharon Steel Corp.*, 590 F.Supp. 18, 21–22 (S.D.N.Y.1983) (applying Pennsylvania law and concluding that it is "well settled that the UCC does not provide the remedy of consequential damages for aggrieved sellers"), *aff'd mem.*, 742 F.2d 1431 (2d Cir.1983); *see also Nobs Chemical, U.S.A., Inc. v. Koppers Co.*, 616 F.2d 212, 216 (5th Cir.1980); *Petroleo Brasileiro*, 372 F.Supp. at 508. Because the UCC does not provide sellers of goods with a remedy for consequential damages, I must ascertain whether state law provides plaintiff with a basis for recovering these damages.

### 2. *Pennsylvania Common Law*

Under section 1–106 of the UCC, consequential damages may be had "by other rule of law." Moreover, section 1–103 states that

damages as first enunciated in *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng.Rep. 145 (1854).

"[u]nless displaced by the particular provisions of this [Code], the principles of law and equity ... shall supplement its provisions." The Third Circuit has ruled that under section 1–103 of the Pennsylvania UCC, conduct by a party, which would not run afoul of the UCC's provisions, could still subject the party to a tort claim. *Skeels v. Universal C.I.T. Credit Corp.*, 335 F.2d 846, 850–51 (3d Cir. 1964). Additionally, in *Associated Metals*, the Southern District of New York held that even though a claim for interest costs would be precluded as improper consequential damages, Pennsylvania common law provided a remedy for the claimed damages. 590 F.Supp. at 22–23.[11] Therefore, only if plaintiff has alleged a cause of action independent of the UCC, such that recovery of the "loss business opportunity" would be warranted, would count V survive this motion to dismiss.

 In response to defendant's motion to dismiss, plaintiff argues that count V states a claim for the intentional interference with a prospective contractual relation under Pennsylvania law. (Pl.'s Resp. to Def.'s Mot. to Dismiss at 15–23.) In order to state a claim under this theory, four elements must appear in plaintiff's complaint:

(1) a prospective contractual relation;

(2) the purpose or intent to harm the plaintiff by preventing the relation from occurring;

(3) the absence of any privilege or justification on the part of the defendant; and

(4) the occasioning of actual damage resulting from the defendant's conduct.

*Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466, 471 (1979); *Glenn v. Point Park College*, 441 Pa. 474, 272 A.2d 895, 898 (1971); *see also Advent Sys. Ltd. v. Unisys Corp.*, 925 F.2d 670, 673 (3d Cir.1991).

 Plaintiff has failed to state a claim for the intentional interference with a prospective contractual relation because count V fails to contain a sufficient allegation of specific intent. *Glenn*, 272 A.2d at 899. Plaintiff merely alleges that defendant "had direct and actual knowledge ... [that plaintiff] had been offered for sale, and that negotiations were under way with regard to a possible sale of [plaintiff]." (Complaint at ¶ 52.) Mere knowledge of a contractual relation that is somehow interfered with by a party is not sufficient to state a cause of action. The Supreme Court of Pennsylvania has held that in order to state a claim, there needs to be an allegation that defendant acted with "the specific purpose of causing harm to the plaintiff." *Glenn*, 272 A.2d at 899 ("'The wrong ordinarily requires conduct intended to interrupt negotiations or prevent the consummation of a contract.'" (quoting 1 Harper & James, The Law of Torts § 611, at 513)). In *Glenn*, the court ruled that even an allegation that the defendant "intentionally, wrongfully, [and] maliciously ... interfered with" a prospective contractual relationship was insufficient because there was no allegation that the defendant intended to cause harm to the plaintiffs. *Id.* at 899. There is nothing in the record to suggest that Pet, by notifying Atlantic that all business relations with Atlantic were terminated, intended to cause harm to Atlantic or its business, even if harm was inevitable because of the termination.

It should be noted that plaintiff had attempted, in count VI, to state a claim that Pet had intentionally interfered with contractual relations between plaintiff and Whitman's. By stipulation, that count was dismissed with prejudice. In that count, plaintiff at least attempted to allege the requisite intent for liability under the theory: "Pet, Incorporated intentionally and improperly interred [sic] with the business relations and/or performance of the contract between Whitman's Chocolates and Plaintiff." (Complaint at ¶ 60.)[12] Consequently, not only is it ap-

---

**11.** Defendant argues that *Petroleo Brasileiro*, specifically held that an "independent cause of action," could not circumvent the UCC's consequential damages bar. (Reply to Pl.'s Resp. at 15 n. 5.) Defendant's reading of this case is misplaced. To the contrary, *Petroleo Brasileiro* clearly stated that a separate action is possible to recover damages otherwise barred by the UCC.

"Plaintiff's claim is not cognizable under the Code, and is maintainable only if otherwise allowed under prior New York law." 372 F.Supp. at 509. The court barred the claim for damages after it concluded that it could find no law to support independently the claim. *Id.*

**12.** It would appear, however, that even this allegation is insufficient to state a claim for inten-

parent that count V has failed to state a claim upon which relief can be granted, but it seems clear that plaintiff never intended to state a claim for intentional interference with prospective contractual relations. Instead, plaintiff has attempted to recover consequential damages, which the UCC has explicitly denied to sellers. I will grant defendant's motion to dismiss as to count V.

An order follows.

### ORDER

Upon consideration of defendant's motion to dismiss counts III, IV and V of plaintiff's complaint, plaintiff's response, and defendant's reply, defendant's motion is GRANTED in part and DENIED in part.

IT IS ORDERED that count V (loss of business opportunity) is DISMISSED. Plaintiff may proceed with counts III (promissory estoppel) and IV (promissory estoppel) in addition to counts I (breach of contract) and II (breach of contract).

tional interference with prospective contractual relations because there is no allegation that defendant intended to harm plaintiff. *See Glenn,* 272 A.2d at 899.