**STELWAGON MANUFACTURING COMPANY, Plaintiff,**

v.

**TARMAC ROOFING SYSTEMS, INC., Defendant.**

Civ. A. No. 92–1073.

United States District Court, E.D. Pennsylvania.

Sept. 12, 1994.

---

David A. Gradwohl and Patrick J. Doran, Pelino & Lentz, Philadelphia, PA, for plaintiff.

Scott R. Shepherd, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, PA, for defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

This antitrust and breach of contract action was tried to a jury, which rendered a verdict in plaintiff's favor. Post-trial motions were subsequently filed, with defendant claiming various points of legal and trial error. For the reasons herein stated, the defendant's motion for judgment as a matter of law and for a new trial will be denied, but its motion for remittitur will be granted.[1]

## I. BACKGROUND

Stelwagon Manufacturing Company ("Stelwagon") is a wholesale distributor of roofing and related materials.[2] In early 1988, Stelwagon entered into an oral, semi-exclusive distributorship agreement with Tarmac Roofing Systems, Inc. ("Tarmac"), for the distribution of Tarmac's modified asphalt products ("MAPs") in the Philadelphia area. MAPs are rolled roofing products used to cover flat roofs, and are sold to roofing contractors. *See* Tr. of 12/14/93, at 56–57 (Keenan). Stelwagon sold Tarmac-brand MAPs in 1988 and 1989 without incident in the relationship and with steadily improving results. In early 1989, Stelwagon became aware of sales made to its competitors in violation of the agreement. Some of these sales were also made at preferential prices. Stelwagon complained to Tarmac, and eventually brought the instant action, alleging breach of contract as well as price discrimination in violation of federal antitrust law. *See* 15 U.S.C. §§ 13(a), 15.

---

1. Given the remittitur, the Court will continue its consideration of Stelwagon's motion for attorney's fees pending final resolution of this matter.

2. Notwithstanding the company's name, Stelwagon is not a manufacturer. *See* Tr. of 12/14/93, at 52 (testimony of John R. Keenan).

Defendant moved at the close of plaintiff's case, and again at the close of all the evidence, for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a)(1)[3] on all counts of plaintiff's complaint. Both of these motions were denied and the case was submitted to the jury, which rendered a verdict in plaintiff's favor on the breach of contract and price discrimination claims, awarding plaintiff $1,500,000 and $772,000 respectively. The Court trebled the antitrust damages, see 15 U.S.C. § 15, and entered judgment in plaintiff's favor in the amount of $3,816,000. Defendant now renews its motion, and, in the alternative, requests a new trial or remittitur. See Fed. R.Civ.P. 50(b), 59(a).[4]

## II. DISCUSSION

### A. Legal Standards

■ The discarding of a jury verdict and entry of judgment as a matter of law in favor of the party who failed to prevail at trial is not lightly done. The evidence in the case must be viewed in the light most favorable to the successful party, and every reasonable inference therefrom must be drawn in that party's favor. See Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 190 (3d Cir.1992), cert. denied, — U.S. —, 113 S.Ct. 1285, 122 L.Ed.2d 677 (1993); Fireman's Fund Ins. Co. v. Videfreeze Corp., 540 F.2d 1171, 1178 (3d Cir.1976) ("The trial judge, in his review of the evidence, ... must expose the evidence to the strongest light favorable to the party against whom the motion is made and give him the advantage of every fair and reasonable inference."), cert. denied, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977). It is impermissible to question the credibility of witnesses, or to weigh conflicting evidence as would a factfinder. See Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 691 (3d Cir.1993). Applying these precepts, a jury verdict can be displaced by judgment as a matter of law only if "the record is 'critically deficient of that minimum quantum of evidence from which the jury might reasonably afford relief.'" Dawson v. Chrysler Corp., 630 F.2d 950, 959 (3d Cir.1980) (quoting Denneny v. Siegel, 407 F.2d 433, 439 (3d Cir.1969)), cert. denied, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981).

■ Similar concerns restrict the Court's discretion in ordering a new trial pursuant to Federal Rule of Civil Procedure 59. "Such an action effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of the facts." Lind v. Schenley Indus., Inc., 278 F.2d 79, 90 (3d Cir.) (in banc), cert. denied, 364 U.S. 835, 81 S.Ct. 58, 5 L.Ed.2d 60 (1960). A new trial on the basis that the verdict is against the weight of the evidence can be granted "only where a miscarriage of justice would result if the verdict were to stand." Klein v. Hollings, 992 F.2d 1285, 1290 (3d Cir.1993). Where the proffered basis is trial error, "[t]he court's inquiry ... is twofold. It must first determine whether an error was made in the course of the trial, and then must determine whether that error was so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice." Farra v. Stanley–Bostitch, Inc., 838 F.Supp. 1021, 1026 (E.D.Pa.1993) (quota-

---

**3.** Federal Rule of Civil Procedure 50(a)(1) provides that:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

**4.** Rule 50(b) reads, in relevant part, as follows:

> Whenever a motion for a judgment as a matter of law made at the close of all the

evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Such a motion may be renewed by service and filing not later than 10 days after entry of judgment....

Rule 59(a) reads, in relevant part, as follows:

> A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States....

tion marks omitted), *aff'd without op.*, 31 F.3d 1171 (3d Cir.1994); *see* Fed.R.Civ.P. 61. An error in jury instructions must be so substantial that, viewed in light of the evidence in the case and the charge as a whole, " 'the instruction was capable of confusing and thereby misleading the jury.' " *Link v. Mercedes–Benz of N. Am., Inc.*, 788 F.2d 918, 922 (3d Cir.1986) (quoting *United States v. Fischbach & Moore, Inc.*, 750 F.2d 1183, 1195 (3d Cir.1984)).

### B. *Breach of Contract Claim*

1. Failure to establish the terms of the contract by clear and precise evidence

The parties agree that, under Pennsylvania law,[5] the terms of an oral contract must be established by clear and precise evidence in order to be enforceable.[6] *Richardson v. John F. Kennedy Memorial Hosp.*, 838 F.Supp. 979, 987–88 (E.D.Pa. 1993); *Gorwara v. AEL Indus., Inc.*, 784 F.Supp. 239, 242 (E.D.Pa.1992). The clear and precise standard, however, does not require that there be undisputed evidence in the record. Rather, "[o]nce it is determined that the parties intended to form a binding agreement, certainty of terms is important

only as a 'basis for determining the existence of a breach and for giving an appropriate remedy.' " *Browne v. Maxfield*, 663 F.Supp. 1193, 1198 (E.D.Pa.1987) (quoting Restatement (Second) of Contracts § 33). "Exact precision" is not required. *Richardson*, 838 F.Supp. at 988. The jury is to determine the terms and the parties' understanding thereof, viewed in light of all the surrounding circumstances. *See Lucacher v. Kerson*, 355 Pa. 79, 48 A.2d 857, 857–58 (1946); *McCormack v. Jermyn*, 351 Pa. 161, 40 A.2d 477, 479–80 (1945); *Kirk v. Brentwood Manor Homes, Inc.*, 191 Pa.Super. 488, 159 A.2d 48, 51 (1960). At trial, testimony concerning the distributorship agreement was offered by numerous witnesses, including John Keenan, plaintiff's vice-president and general manager, and Gordon Amhaus, former vice-president of sales and marketing at Tarmac.[7] That there were conflicts or contradictions in the testimony is of no moment, since resolution of such inconsistencies is peculiarly the province of the jury. The testimony offered supports Stelwagon's version of the contract between the parties: an exclusive distributorship within Philadelphia, with the exception of Roofer's Mart, a pre-existing distribu-

---

**5.** In resolving Stelwagon's breach of contract claim, state law applies. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Neither party contests that Pennsylvania law applies.

**6.** Although plaintiff has agreed that this is the evidentiary standard it must meet, the Court's review of the case law does not support this conclusion. Although a number of cases decided by the federal courts sitting in Pennsylvania have adopted this characterization of Pennsylvania law, *see, e.g., Richardson v. John F. Kennedy Memorial Hosp.*, 838 F.Supp. 979, 987–88 (E.D.Pa.1993); *Kassab v. Ragnar Benson, Inc.*, 254 F.Supp. 830, 832 (W.D.Pa.1966), it appears that the case upon which this line of precedent is based, *Miller v. Wise*, 33 Pa.Super. 589, 593 (1907), dealt not with a garden-variety oral contract, but with an oral contract that allegedly modified a written agreement. *See Pellegrene v. Luther*, 403 Pa. 212, 169 A.2d 298, 299 (1961) ("The law is well settled that a written agreement can be modified by a subsequent oral agreement provided the latter is based upon a valid consideration and is proved by evidence which is clear, precise and convincing."). The clear and precise standard has also been applied when fraud is claimed in the formation of a contract, *see*

*Krause v. Great Lakes Holdings, Inc.*, 387 Pa.Super. 56, 563 A.2d 1182, 1187 (1989), *appeal denied*, 524 Pa. 629, 574 A.2d 70 (1990), or when an oral contract creating or modifying a will is sought to be enforced, *see Kelly v. Sheehan*, 378 Pa. 33, 105 A.2d 706, 707 (1954); *Hatbob v. Brown*, 394 Pa.Super. 234, 575 A.2d 607, 612 (1990). Also significant is the omission of this standard in the Pennsylvania Suggested Standard Civil Jury Instructions, which highlight that oral contracts are just as enforceable as written ones, *see* Pa. SSJI (Civil) § 15.01, but fail to mention the clear and precise standard. Thus, the heightened standard of clear and precise evidence would appear to be applicable to situations where a party seeks to modify a written document with a subsequent oral contract, not for generally establishing an oral contract.

Since both parties have argued that the clear and precise standard applies, and since plaintiff's proof was sufficient to go to the jury based on the higher standard, the Court will apply the clear and precise standard in this case.

**7.** At the time of the trial, Mr. Amhaus was employed by GS Roofing Products, Inc., a company that had purchased Tarmac's assets while the litigation was pending. *See* Tr. of 12/15/1993, at 97–98 (testimony of Gordon Amhaus).

tor. There is no basis for entry of judgment as a matter of law in favor of defendant.

### 2. Failure to establish damages

■ Tarmac argues that Stelwagon also failed to introduce evidence of damages resulting from the breach of contract. Stelwagon argues that it introduced sufficient evidence to allow the jury to calculate its lost profits due to the breach of the distributorship agreement. Stelwagon may recover lost profits "if there is (1) evidence to establish the damages with reasonable certainty; (2) they were the proximate consequence of the wrong; [and] (3) they were reasonably foreseeable." *Advent Sys. Ltd. v. Unisys Corp.*, 925 F.2d 670, 680 (3d Cir.1991) (citing *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa.Super. 90, 464 A.2d 1243, 1258 (1983)). Stelwagon offered at trial the expert testimony of Dr. Martin Perry, who opined on Tarmac's sales of MAPs to one of Stelwagon's competitors, Allied Roofing, as well as on Stelwagon's average profit margin. *See* Tr. of 12/16/93, at 77–79 (testimony of Dr. Martin Perry). Sales within Philadelphia in violation of the distributorship agreement represented lost volume to Stelwagon. This was sufficient evidence from which the jury could conclude that, to the extent Allied sold Tarmac-brand MAPs in Philadelphia, Stelwagon suffered a loss of profits.[8]

### 3. Contract was barred by the Statute of Frauds

■ Neither party contests the applicability of Article Two of the Uniform Commercial Code, governing the sale of goods, to the distributorship agreement. *See* 13 Pa.Cons.Stat.Ann. §§ 2101–2725 (1984 & Supp.1994); *Weilersbacher v. Pittsburgh Brewing Co.*, 421 Pa. 118, 218 A.2d 806, 807–08 (1966). Tarmac argues that the distributorship agreement alleged by Stelwagon violates the statute of frauds because there is no writing and the contract does not come within any of the statute's exceptions. *See* 13 Pa.Cons.Stat.

Ann. § 2201. Specifically, Tarmac argues that judgment as a matter of law must be entered because waiver of the statute cannot be established by custom in the industry, there was no evidence of a prior course of dealing between the parties, and there was insufficient evidence of part performance. These contentions are without merit. As the Pennsylvania Superior Court held in *H.B. Alexander & Son, Inc. v. Miracle Recreation Equipment Co.*, 314 Pa.Super. 1, 460 A.2d 343 (1983), custom and usage of trade can indicate that there has been a waiver of the statute of frauds' protection, *see id.* 460 A.2d at 345. *See also Atlantic Paper Box Co. v. Whitman's Chocolates*, 844 F.Supp. 1038, 1044–45 (E.D.Pa.1994). That there was no prior course of dealing between Stelwagon and Tarmac is irrelevant, since there was evidence in the record to support a conclusion that Tarmac waived the statute of frauds in line with the established industry course of dealing. *See* Tr. of 12/14/93, at 77–78 (Keenan); Tr. of 12/15/93, at 116–21 (Amhaus).

■ Likewise, the jury was correctly instructed on the performance exception to the statute of frauds. *See* 13 Pa.Cons.Stat.Ann. § 2201(c)(3). Amhaus acknowledged that, as a Tarmac vice-president, he enforced the exclusivity provisions of the distributorship agreement. *See* Tr. of 12/15/93, at 124 (Amhaus); Tr. of 12/14/93, at 84–86 (Keenan). The argument that the performance exception only excepts the contract to the extent of actual performance is not apposite in the context of a distributorship agreement, where the parties are pledging to use their best efforts. Unlike the sale of discrete goods, upon which Article Two is originally grounded, a distributorship agreement cannot be readily segmented. Tarmac's conduct indicated the existence of an agreement, and it cannot claim inequity in being held to the full terms of the agreement it entered into. As Justice Musmanno penned in describing the role of the statute of frauds:

---

**8.** In the alternative, Tarmac requests a new trial because Dr. Perry's opinion was improperly admitted and because the verdict was against the weight of the evidence. The former issue is taken up *infra*. As to the weight of the evidence argument, the liability verdict in Stelwagon's fa-

vor does not constitute "a miscarriage of justice." *See Klein*, 992 F.2d at 1290. The amount of damages, however, is suspect, and forms the basis for the Court's remittitur, also discussed *infra*.

The laudable purpose of this guardian of truth is to prevent frauds and perjuries. Occasionally, however, an embattled property owner or prospective purchaser of land, summons the statute to enforce a condition which does not seem to coincide with principles of honesty and fair dealing. In such cases the Courts should study the situation involved to make certain that the statute is not being used to perpetrate fraud and perjuries rather than prevent them.

*Simplex Precast Indus., Inc. v. Biehl,* 395 Pa. 105, 149 A.2d 121, 123 (1959). Tarmac's motion for judgment as a matter of law on the statute of frauds issue must be denied.[9]

### 4. Improper instruction on breach of duty of good faith

■ Tarmac argues that the jury was incorrectly instructed that it could award Stelwagon damages if it found that Tarmac breached the duties of good faith and fair dealing and Stelwagon suffered damages therefrom, citing to *Creeger Brick & Building Supply Inc. v. Mid–State Bank & Trust Co.,* 385 Pa.Super. 30, 560 A.2d 151, 154 (1989). Tarmac claims that the Court's charge allowed the jury to award damages without finding that an express term of the contract was breached. This argument is unavailing for two reasons. First, given the Court's lowering, via remittitur, of the breach of contract damages to the specific amount of MAPs sold by Allied in violation of the express terms of the distribution agreement, i.e., in Philadelphia, no damages will be awarded for breach of the duties of good faith and fair dealing. Second, while the actual holding of *Creeger Brick* is that, with a few exceptions, Pennsylvania law does not recognize a duty of good faith in general contract law, *see id.* 560 A.2d at 153–54, in this case, Article Two of the UCC expressly imposes such a duty on every contract for the sale of goods, *see* 13 Pa.Cons.Stat.Ann.

§§ 1203, 2103, and thus this duty informs the performance of the instant contract's terms. *See Seal v. Riverside Fed. Sav. Bank,* 825 F.Supp. 686, 699 (E.D.Pa.1993) ("The chief purpose of the good faith obligation is 'to enable enforcement of the contract terms in a manner consistent with the parties' reasonable expectations.' ") (quoting *Coxfam, Inc. v. AAMCO Transmissions,* Civ.A. No. 88–6105, 1990 WL 131064, at *5 (E.D.Pa. Sept. 6, 1990)). In this case, Stelwagon introduced evidence of Tarmac's skirting the geographic limits of the distributorship agreement by selling to distributors that, while situated just outside of Philadelphia, sold their goods into Philadelphia. *See* Tr. of 12/14/93, at 113–14 (Keenan). Whether this conduct was consistent with the parties' reasonable expectations of performance was an issue for the jury to decide.[10]

### C. *Robinson–Patman Act Claim*

Stelwagon argued that it suffered a second-line Robinson–Patman Act violation. A second-line injury "is characterized by price discrimination by a seller in sales to competing buyers." *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1526 (3d Cir. 1990), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991); *see FTC v. Fred Meyer, Inc.,* 390 U.S. 341, 348–49, 88 S.Ct. 904, 908–08, 19 L.Ed.2d 1222 (1968). Tarmac challenges Stelwagon's verdict on the Robinson–Patman claim, asking for judgment as a matter of law, or, in the alternative, a new trial. Because none of the arguments have merit, the motions will be denied.

### 1. Failure to show harm to competition

■ "In order to establish a *prima facie* violation of section 2(a) of the [Robinson–Patman] Act, a plaintiff must demonstrate a reasonable possibility that a price difference may harm competition." *J.F. Feeser,* 909 F.2d at 1531 (citing *Falls City Indus., Inc. v.*

---

9. Tarmac argues in the alternative that the failure to show a clear and unequivocal waiver and the Court's incorrect instruction on the performance exception demand a new trial. Tarmac also claims that the jury's verdict on the performance issue was against the weight of the evidence. The Court finds these arguments to be without merit.

10. Whether there was sufficient evidence to support the damages awarded is a different matter, one taken up below in the discussion of the motion for remittitur.

*Vanco Beverage, Inc.,* 460 U.S. 428, 435, 103 S.Ct. 1282, 1288, 75 L.Ed.2d 174 (1983)). Tarmac argues that Stelwagon failed to present, as a matter of law, any evidence establishing harm to competition, either by showing a substantial price discrimination between competitors over time or by evidence of actual lost sales or profits. *See id.* at 1535; *see also FTC v. Morton Salt Co.,* 334 U.S. 37, 46–47, 68 S.Ct. 822, 828–829, 92 L.Ed. 1196 (1948).

The record, however, contains evidence that would support a jury finding of harm to competition under either method. The testimony of Keenan, Amhaus, and two of Stelwagon's territorial managers supported a finding that Stelwagon was competing with Standard Roofing, which was receiving more favorable pricing than Stelwagon. *See* Tr. of 12/14/93, at 63–65 (Keenan); Tr. of 12/15/93, at 51–52 (Bannon); *id.* at 79–80 (Quinn); *id.* at 116–18 (Amhaus). Additionally, there was evidence that Celotex competed with Stelwagon, and that Celotex, which was characterized as a manufacturer, was in economic reality acting on the same distribution level as Stelwagon. *See Texaco, Inc. v. Hasbrouck,* 496 U.S. 543, 552–55, 110 S.Ct. 2535, 2540–42, 110 L.Ed.2d 492 (1990); Tr. of 12/15/93, at 4–11 (Keenan) (testifying that Celotex had sold MAPs directly to a roofing contractor to which Stelwagon also sells); Tr. of 12/16/93, at 129–32 (testimony of Marlene E. Granitz) (testifying that Tarmac sometimes shipped Celotex-brand MAPs directly to distributors). Stelwagon also introduced the testimony of Dr. Perry and the anecdotal evidence of its customer's statements, admit-

ted under the state of mind hearsay exception, *see* Fed.R.Evid. 803(3); *J.F. Feeser,* 909 F.2d at 1535 n. 11; *Kraft General Foods, Inc. v. BC–USA, Inc.,* 840 F.Supp. 344, 348 (E.D.Pa.1993), to establish that it actually lost sales to Celotex and Standard. On this basis, Tarmac's claim that Stelwagon failed to introduce sufficient competent evidence to support a finding of harm to competition must fail.

### 2. Failure to show antitrust injury

▮ In addition to establishing a *prima facie* Robinson–Patman Act violation, a plaintiff must also show actual damages before it can recover treble damages under the Clayton Act. *See Texaco, Inc.,* 496 U.S. at 573 & n. 31, 110 S.Ct. at 2551 & n. 31; *J. Truett Payne Co. v. Chrysler Motors Corp.,* 451 U.S. 557, 561–62, 101 S.Ct. 1923, 1926–27, 68 L.Ed.2d 442 (1981). Tarmac argues that Stelwagon has failed to establish this antitrust injury that is essential to the verdict entered by the jury. This argument is without merit. Stelwagon presented testimonial witnesses who established that sales were lost to Standard and Celotex due to the lower prices they were able to offer due to the price discrimination, as well as the actual decline in sales Stelwagon suffered during the relevant time period and the expert testimony of Dr. Perry.[11]

### D. *Other Trial Errors*

#### 1. No missing witness instruction

▮ Tarmac requested at the close of the evidence that the Court give a missing witness instruction, arguing that Stelwagon's

---

11. Tarmac's repeated attempts to exclude the testimony of Dr. Perry rest largely on the basis that Dr. Perry's methodology is flawed. The Court found Dr. Perry to be qualified, without objection, as an expert in economics and price discrimination analysis. *See* Tr. of 12/16/93, at 51–52. Review of Dr. Perry's methodology indicates application of standard economic principles. *Cf. Daubert v. Merrell Dow Pharmaceuticals, Inc.,* —— U.S. ——, ————, 113 S.Ct. 2786, 2795–97, 125 L.Ed.2d 469 (1993) (discussing the application of the Rules of Evidence to proffered scientific expert testimony). Tarmac's complaints are essentially disagreements with Dr. Perry's conclusions as well as the thoroughness of his factual basis. The Court finds that there were sufficient facts upon which to base

the opinion and that any flaws in the process are not so substantial to deprive Dr. Perry of " 'good grounds' for his ... conclusions." *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 746·(3d Cir. 1994). Tarmac's objections are more properly directed at attacking the weight that should be accorded the opinion, not the opinion's admissibility. *See Breidor v. Sears, Roebuck & Co.,* 722 F.2d 1134, 1139–41 (3d Cir.1983); *see also United States v. L.E. Cooke Co.,* 991 F.2d 336, 342 (6th Cir.1993); *Singer Co. v. E.I. du Pont de Nemours & Co.,* 579 F.2d 433, 443 (8th Cir.1978) (holding that "it is ... for the jury, with the assistance of vigorous cross-examination, to measure the worth of the opinion"). The objections based on the improper admission of Dr. Perry's report are therefore without merit.

witnesses had referred to the statements of customers who were not previously identified. Such an instruction is proper where a witness is peculiarly within the power of one party and would presumably testify in that party's favor, but is not called to testify. *See Graves v. United States,* 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893); *United States v. Nahoom,* 791 F.2d 841, 846 (11th Cir.1986); *Chicago College of Osteopathic Medicine v. George A. Fuller Co.,* 719 F.2d 1335, 1353 (7th Cir.1983). Where witnesses are equally available to both sides, the instruction is not appropriate. *See United States v. Vastola,* 899 F.2d 211, 235 (3d Cir.), *vacated on other grounds,* 497 U.S. 1001, 110 S.Ct. 3233, 111 L.Ed.2d 744 (1990). Tarmac's request was denied, as will be its post-trial motion, because it failed to show that the alleged missing witnesses were in the peculiar control of Stelwagon. Indeed, Tarmac did not call any of the customers that it admits Stelwagon's witnesses previously identified, witnesses that presumably could have been called by either side. Tarmac's motion for a new trial on this basis is denied.

### 2. Exclusion of Dr. Kursh's report and testimony

Tarmac also alleges that the expert report prepared by Dr. Samuel J. Kursh on behalf of Stelwagon for use in a separate, unrelated state court action should have been admitted for purposes of impeaching the testimony of Stelwagon's witnesses concerning the reason for the drop in Stelwagon's MAP sales, or that Dr. Kursh should have been allowed to testify to the same. The Court denied the request on the grounds that the probative value of the material offered was substantially outweighed by the prejudicial nature of the report and the eleventh-hour manner by which it was introduced by Tarmac. *See* Fed.R.Evid. 403. The Court declines the

invitation to revisit this determination, and the motion for a new trial is therefore denied.

### E. *Remittitur*

Tarmac argues in the alternative that the Court should grant a remittitur in this case due to the excessiveness of the damages awarded. Remittitur is appropriate if the Court "finds that a decision of the jury is clearly unsupported and/or excessive." *Spence v. Board of Educ. of Christina Sch. Dist.,* 806 F.2d 1198, 1201 (3d Cir.1986); *see* 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil* § 2815 (1973). If remittitur is granted, the party against whom it is entered can accept it or can proceed to a new trial on the issue of damages.

In the instant case, the Court is left with the inescapable impression that the damages awarded by the jury in this case are unsupported by the evidence and are grossly excessive. The jury awarded Stelwagon $1,500,000 in damages for the breach of the distributorship agreement. *See* Tr. of 12/21/93, at 62. Yet, plaintiff's expert was only able to testify as to the damages occasioned by Tarmac's sales to Allied, an amount that he estimated was $42,424. *See* Pl.'s Ex. 27. Additional damages testimony was offered by Keenan, who testified that the cost of the MAPs was only 40% of the sale in a "new roof" job, with the other 60% composed of the sale of related products with similar profit margins. *See* Tr. of 12/14/93, at 59–61. In sales for "re-roof" jobs, the MAPs made up two-thirds of the sale, with the related products making up one third. Keenan also testified that new roofs were about 25% of sales, and re-roofs 75%. Applying these percentages, as well as Dr. Perry's calculation of lost MAP sales and Stelwagon's profit margin, arrives at a figure of $72,242:

| | MAP Sales | Ratio between Related Product Sales and MAP Sales | Total Related Product Sales |
|---|---|---|---|
| New Roof | $10,606 (42,424 × .25) | 1.5 (.60/.40) | $15,909 |
| Re-roof | $31,818 (42,424 × .75) | .5 (.33/.66) | $15,909 |
| | | | $31,818 |
| | | MAP Sales | $42,424 |
| | | TOTAL SALES | $72,242 |

Though damages do not have to be calculated or estimated with mathematical certainty, there must be some basis in the record for a jury's award. *See Advent Sys.,* 925 F.2d at 681. There was no evidence presented in this case supporting a figure on the breach of contract claim in excess of $72,242.

■ Likewise, the figure calculated by Dr. Perry in support of the Robinson–Patman claim is only $257,362. *See* Pl.'s Ex. 23. Even using the percentages attested to by Keenan, as described *supra,* the amount of damages increases only to $450,383.50, a good deal removed from the $772,000 verdict entered by the jury and subsequently trebled by the Court:

| | MAP Sales | Ratio between Related Product Sales and MAP Sales | Total Related Product Sales |
|---|---|---|---|
| New Roof | $ 64,340.50 (257,362 × .25) | 1.5 (.60/.40) | $96,510.75 |
| Re-roof | $193,021.50 (257,362 × .75) | .5 (.33/.66) | $96,510.75 |
| | | | $193,021.50 |
| | | MAP Sales | $257,362 |
| | | TOTAL SALES | $450,383.50 |

Based on the figures just calculated, the Court determines that Stelwagon's total damages in this case, after trebling of the Robinson–Patman damages, should be in the amount of $1,423,392.50.[12] The Court having previously entered judgment in the amount of $3,816,000, Stelwagon will be ordered to remit $2,392,607.50, within twenty days, or, if remittitur is refused, to submit to a new trial on damages.[13]

An appropriate order shall be entered.

## ORDER

AND NOW, this 12th day of September, 1994, upon consideration of defendant's motion for judgment as a matter of law, new trial, and/or remittitur (Doc. No. 63), and plaintiff's motion for attorney's fees (Doc. No. 64), for the reasons stated in the Memorandum accompanying this Order, it is hereby **ORDERED** as follows:

1. Defendant's motion for judgment as a matter of law is **DENIED;**

2. Defendant's motion for a new trial is **DENIED;**

3. Defendant's motion for remittitur is **GRANTED.** Plaintiff shall remit $2,392,-607.50 within twenty (20) days of this Order, or, if remittitur is refused, shall submit to a new trial on damages; and

---

**12.** $74,242 + ($450,383.50 × 3) = $1,423,-392.50.

**13.** Given the disposition of defendant's post-trial motion, plaintiff's petition for attorney's fees will be denied without prejudice, pending the final resolution of this litigation.

4. Plaintiff's motion for attorney's fees is **DENIED WITHOUT PREJUDICE.**

AND IT IS SO ORDERED.